Cheryl E. FULLER, Appellant–Petitioner,

v.

ALLISON GAS TURBINE DIVISION, GENERAL MOTORS CORP., Appellee–Respondent.

No. 93A02–9602–EX–125.

Court of Appeals of Indiana.

Aug. 26, 1996.

W. Russell Sipes, Indianapolis, for appellant-petitioner.

Herbert C. Snyder, Jr., Barnes & Thornburg, Fort Wayne, for appellee-respondent.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Cheryl E. Fuller appeals the dismissal by the Indiana Civil Rights Commission (ICRC) of her discrimination complaint against Allison Gas Turbine Division, General Motors Corporation (Allison).

We affirm.

### ISSUES

Fuller raises three issues, which we consolidate and restate as:

Whether there was sufficient evidence to support the ICRC's finding that Allison did not discriminate against Fuller by failing to enforce its no-smoking policy, or by transferring her to another job in retaliation for filing a civil rights complaint.[1]

### FACTS [2]

Fuller began working for Allison in 1976 in a clerical position. During the last few years of her employment there, she held a secretarial position in the Direct Purchasing department. Fuller suffers from asthma and an array of other allergies. She is particularly sensitive to cigarette smoke. Fifteen to twenty people worked in the Direct Purchasing department. It is located in a room approximately 50 feet by 50 feet in size, divided into cubicles in which one or more people work. The cubicles are separated by partitions four or five feet high. In October 1986, Allison's Smoking Task Force designated Fuller's cubicle area, where eight people worked, a no-smoking area. The action resulted, at least in part, from Fuller's efforts. Because smoke from other areas still entered Fuller's work area over the partitions, she complained to her supervisors and to the task force, and by May of 1990, the entire room was designated a no-smoking area.

Fuller continued to be affected by smoke from employees who smoked in the area despite the no-smoking designation, and by smoke that entered the area from adjacent areas of the plant where smoking was permitted. On at least three occasions between August 1990 and February 1991, Fuller received performance evaluations or warning letters critical of both her attendance and her job performance. Fuller attributed her deficiencies in those areas to the continued presence of cigarette smoke. On a number of occasions, Fuller expressed a desire to be transferred out of the Direct Purchasing department, but she only applied for one vacancy during the two years before she stopped working.

In March of 1992, Fuller was transferred to the Traffic Department to fill a vacancy created by a retirement. She was told she had been chosen for the position because only two or three people worked in the office, none of whom smoked, and because there were full walls and doors to separate the office from other work areas. When Fuller first visited the Traffic Department, she had

---

1. In addition to her challenges to the sufficiency of the evidence, Fuller also asserts as error a finding by the Administrative Law Judge that even if Allison failed to enforce its no-smoking policy, such failure would not be actionable under the Indiana statute in effect at the time. We find there was sufficient evidence to support the Commission's finding that Allison did not fail to enforce the policy. Furthermore, the Commission did not adopt or otherwise address the ALJ's finding that non-enforcement would not be actionable. For those reasons, we need not decide that issue.

2. As his Statement of Facts, Fuller's counsel presents a fourteen-page witness-by-witness recitation of the evidence favorable to Fuller's position, in an apparent attempt to discredit the Commission's decision. Fuller's brief, therefore, does not comply with Ind.Appellate Rule 8.3(A)(5), nor with our numerous decisions specifying that the statement of facts is to be a concise narrative of the facts, stated in the light most favorable to the judgment. The statement of facts is not to be argumentative nor is it to merely summarize the testimony of each witness. *FMC Corp. v. Brown*, 526 N.E.2d 719, 723 n. 1 (Ind.Ct.App.1988), *aff'd.*, 551 N.E.2d 444 (Ind. 1990). Noncompliance with the Rules of Appellate Procedure is a basis for dismissal of an appeal or waiver of issues presented therein, *see Terpstra v. Farmers and Merchants Bank*, 483 N.E.2d 749, 752 (Ind.Ct.App.1985), *reh'g. denied*, *trans. denied*. However, we have chosen to reach the merits of this case despite the failure of Fuller's counsel to comply with the rule.

to walk a considerable distance through manufacturing areas of the plant. The fumes in those areas aggravated her asthma. She was then shown an alternate entrance which would allow her to enter the office more directly from an adjacent parking lot.

Fuller found the Traffic Department assignment unsatisfactory, claiming that odors and fumes from the manufacturing processes elsewhere in the plant and cigarette smoke from a nearby office aggravated her condition to the point where she could not continue working. Fuller left her job after two and one half days in the Traffic Department. She then applied for, and was awarded, total and permanent disability retirement benefits.

Fuller's original complaint was filed with the ICRC in September of 1990. It alleged that Allison failed to enforce its no-smoking policy and that the absenteeism problem asserted in Allison's evaluation of her work in August of 1990 was adversely affected by Allison's failure to enforce the policy. In January of 1994, Fuller amended her complaint to allege that Allison transferred her to the Traffic Department either in order to force her to retire, or in retaliation for her filing her original complaint. The Commission held a hearing on the complaint, and on motion by Allison, the Commission dismissed Fuller's complaint at the close of her case-in-chief.

### STANDARD OF REVIEW

■ Under the Indiana Civil Rights Act, the ICRC is the ultimate authority in determining findings of fact. *Robison v. Dana Corp.,* 656 N.E.2d 540, 544 (Ind.Ct. App.1995); Ind.Code 22–9–1–6 (Supp.1996). When we review a decision of the ICRC, we are bound by the Commission's findings of fact if they have a reasonably sound basis of evidentiary support based on a review of the record in its entirety. We may not reweigh conflicting evidence before the Commission or judge the credibility of witnesses, and we may not substitute our judgment for that of the Commission; that is, we may not reverse a decision because we might have reached a different result on the evidence presented. *Indiana Civil Rights Com'n. v. So. Indiana Gas and Electric Co.,* 648 N.E.2d 674, 679 (Ind.Ct.App.1995), *trans. denied.* The Commission's findings of "ultimate fact," however, are subject to review under a reasonableness standard. Ultimate facts are the factual conclusions derived from basic facts. Because findings of ultimate fact represent inferences drawn by the Commission, the reasonableness of the Commission's inferences is a question of law appropriate for our determination. *Id.*

### DISCUSSION

### I.

### Failure to Enforce No–Smoking Policy

■ Fuller's argument that Allison illegally discriminated against her by its failure to enforce its no-smoking policy is plainly an invitation for us to reweigh the evidence. Fuller and other witnesses testified that smoking continued in the Direct Purchasing department after it was designated a no-smoking area, and that supervisory personnel in that department were aware of it but did nothing to stop it. However, the Commission also noted that Fuller often could not identify who the violators were. There was evidence that some of the smoke that affected Fuller migrated into her department from areas where smoking was permitted, indicating the problem was not the result of Allison's failure to enforce the policy in her department. There was testimony that some smokers who violated the policy were careful to hide their ashtrays and cigarettes in their desk drawers, an action presumably motivated by an expectation the policy would be enforced. Some employees who testified in a conclusory manner that the policy was not enforced could not state specifically that any supervisor had observed employees smoking and failed to act. There was testimony that individuals caught smoking had been warned about it by a supervisor. There was ample evidence to support the Commission's finding that Allison did not fail to enforce the rule, and the Commission was entitled to disbelieve evidence to the contrary. Because we cannot reweigh the evidence before the commission, we must conclude that Allison did not discriminate against Fuller by failing to enforce its no-smoking policy.

## II.

### Retaliation

■ In analyzing claims of retaliation, we apply the three-stage test originally formulated to resolve actions brought under Title 7 of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.. Indiana Civil Rights Comm'n v. Culver Educ. Found.*, 535 N.E.2d 112, 115 (Ind.1989). First, the plaintiff must prove, by a preponderance of the evidence, a prima facie case of discrimination. If she does so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. If the defendant carries that burden, then the plaintiff must have the opportunity to prove, by a preponderance of the evidence, that the reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 115–116 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The Commission assumed, without deciding, that Fuller had proven a prima facie case that the transfer was retaliatory, and based its decision on the remaining two factors.

■ The Commission properly found that Allison had articulated a legitimate, nondiscriminatory reason for transferring Fuller. There was evidence that Fuller was transferred because the Traffic Department was in an enclosed area, rather than in a large open area with cubicles; that none of the employees who worked in the Traffic Department smoked; and that the office where Fuller would work had walls and doors to separate it from other areas where smokers worked. It was also readily accessible from outside the building, and thus did not require Fuller to walk through areas of the building where smoke or other fumes were present. Allison's articulated legitimate nondiscriminatory reason for its action—to provide Fuller with a smoke-free working environment—satisfies the second part of the *McDonnell Douglas* test.

■ Fuller's argument that Allison's stated reason for her transfer was not its true reason, but was instead a pretext for discrimination, is yet another invitation for us to reweigh the evidence. To demonstrate pretext in this situation, Fuller must show that she would not have been transferred to the Traffic Department but for retaliation. *See Culver*, 535 N.E.2d at 116. The defendant need not prove the absence of retaliatory motive; it simply must produce evidence sufficient to dispel the inference of retaliation raised by the plaintiff. *Id.*

There was ample evidence in support of the Commission's finding that Fuller did not meet her burden of demonstrating pretext. There was no evidence suggesting Allison did not believe the Traffic Department to be relatively smoke-free compared to other areas of the plant. There was, however, evidence that Fuller had asked to be transferred out of Direct Purchasing, and that Allison transferred Fuller in an attempt to accommodate her asthma and allergies to the extent possible within the plant. The Commission had an adequate basis for its conclusion that Allison's actions were not a pretext for discrimination against Fuller.

### *CONCLUSION*

There was sufficient evidence to support the Commission's conclusions that Allison did not discriminate against Fuller by failing to enforce its no-smoking policy or by transferring her in retaliation for her filing of a discrimination complaint. The Commission's dismissal of her complaint is affirmed.

Affirmed.

FRIEDLANDER and ROBERTSON, JJ., concur.