POWDERTECH, INC., Appellant–Defendant,

v.

Kevin JOGANIC, Appellee–Plaintiff.

No. 64A03–0202–CV–39.

Court of Appeals of Indiana.

Oct. 29, 2002.

Robert L. Clark, Lauren K. Kroeger, Hoeppner, Wagner & Evans, Valparaiso, IN, Attorneys for Appellant.

Susan Kozlowski, Crown Point, IN, Attorney for Appellee.

---

1. This case came before us as an interlocutory appeal. We accepted jurisdiction pursuant to

## OPINION

SHARPNACK, Judge.

Powdertech, Inc., appeals the trial court's denial of its motion for summary judgment in favor of Kevin Joganic.[1] Powdertech raises three issues, which we restate as:

I. Whether the trial court erred by denying Powdertech's motion for summary judgment because Joganic failed to present a cognizable claim of discrimination under the Americans with Disabilities Act ("ADA");

II. Whether the trial court erred by denying Powdertech's motion for summary judgment on Joganic's claim of a retaliatory discharge; and

III. Whether the trial court erred by denying Powdertech's motion for summary judgment on Joganic's claims of negligent and intentional infliction of emotional distress.

We reverse and remand.

The facts most favorable to Joganic follow. Powdertech owns and operates a light industrial facility in Valparaiso, Indiana, that makes industrial powders. Joganic worked at Powdertech from September of 1993 to August of 1998. During the time that Joganic was employed by Powdertech, Powdertech had a disciplinary policy in effect regarding its employees. The disciplinary policy enabled Powdertech to discipline, including discharge, its employees for engaging in any conduct violation such as fighting or attempting bodily harm. On May 26, 1994, Joganic "received [a copy of] and under[stood]" Powdertech's disciplinary policy. Appellant's Appendix at 65.

Rule 14(B)(3).

On January 12, 1996, while Joganic was working as a powder processor at Powdertech, he was involved in a serious work-related accident that resulted in extensive burns to his body, injury to his nose, sinus, and pulmonary system, and post-traumatic stress disorder. As a result of the injuries he sustained during the accident, Joganic could not: (1) sweat, which made him dizzy; (2) perform physical work; or (3) move anything heavy. Moreover, after the accident, Joganic "wore down and wore out a lot faster" than he did prior to the accident. Appellant's Appendix at 215.

Following the accident, Joganic could not return to work for approximately six months, during which time he received weekly worker's compensation benefits. In the summer of 1996, Joganic returned to his job at Powdertech, but worked as a utility operator rather than as a powder processor. Initially, Joganic was unable to perform all of the tasks associated with his new position, such as loading barrels onto skids. Powdertech accommodated Joganic by allowing him to take extra breaks during his workday. In addition, upon his return to Powdertech, Joganic worked the day shift; however, in May or June of 1997, Joganic requested and received placement on the night shift as a utility operator, pursuant to his doctor's recommendations. In the summer of 1998, as part of a reduction in its workforce, Powdertech eliminated various positions, including that of the night shift utility operator. Because of Joganic's seniority, Powdertech offered Joganic the opportunity to return to day shift as a utility operator, which Joganic accepted. Joganic held this position until his termination in August of 1998.

On August 20, 1998, Joganic got into a nonwork-related argument with co-worker Patrick Dilts on Powdertech's premises. Subsequently, Dilts made an obscene gesture toward Joganic. Appellant's Appendix at 242. When Joganic asked Dilts why he had made the obscene gesture, Dilts started "cussing [Joganic] out." *Id.* at 243. Joganic pushed Dilts; Dilts stumbled and fell down. *Id.* at 243–244. Dilts then drove himself to the emergency room for treatment.

After conducting an investigation of the incident, wherein the plant superintendent interviewed witnesses and took hand-written notes, Powdertech discharged Joganic the day after the altercation. Powdertech gave Dilts a verbal reprimand.

On June 3, 1999, Joganic filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Powdertech discharged him because of a disability. After an investigation, the EEOC dismissed Joganic's charge concluding that Joganic had failed to establish a violation of the ADA. On March 16, 2000, Joganic filed suit against Powdertech alleging that he was terminated because of a disability in violation of the ADA. Joganic also alleged that Powdertech fired him in retaliation for his worker's compensation benefits claim and that, through its discriminatory and retaliatory practices, Powdertech inflicted emotional distress upon Joganic. In response, Powdertech filed a motion for summary judgment, which the trial court denied.

■ The purpose of summary judgment is to end litigation where no factual dispute exists that may be determined as a matter of law. *Choung v. Iemma*, 708 N.E.2d 7, 11 (Ind.Ct.App.1999), *reh'g denied.* When reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court. *Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind.1997). Therefore, summary judgment should only be granted when the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law. *Id.* The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Choung,* 708 N.E.2d at 11, *see also Hamilton v. Southwestern Bell Tel. Co.,* 136 F.3d 1047, 1049 (5th Cir. 1998). Once the moving party meets these two requirements, the burden shifts to the nonmoving party to show the existence of a genuine issue by setting forth specifically designated facts. *Choung,* 708 N.E.2d at 11. Any doubts as to any facts or inferences to be drawn therefrom will be resolved in favor of the nonmoving party. *Id.* The party appealing the denial of a motion for summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery,* 609 N.E.2d 1104, 1107 (Ind.1993).

## I.

The first issue is whether the trial court erred by denying Powdertech's motion for summary judgment because Joganic failed to present a cognizable claim of discrimination under the ADA. Powdertech argues that it is entitled to summary judgment on Joganic's claim of discrimination under the ADA because Joganic failed to present evidence on two dispositive issues: (1) whether he has a "disability" under the ADA; and (2) whether Powdertech's proffered, nondiscriminatory reason for terminating Joganic was a "pretext." Appellant's Brief at 16–17. In the absence of such evidence, Powdertech contends, Joganic cannot make out a prima facie case of discrimination under the ADA and, consequently, that portion of Joganic's complaint alleging discrimination fails as a matter of law.

In his complaint, Joganic alleged that Powdertech discharged him because of his "qualified disability" in contravention of the ADA. Appellant's Appendix at 12. To prevail in federal employment discrimination actions that allege discriminatory treatment, employees are required to satisfy the standards and burdens of proof enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). First, the employee must prove, by a preponderance of the evidence, a prima facie case of discrimination. *Id.* If the employee succeeds in proving a prima facie case of discrimination, the burden shifts to the employer to articulate a nondiscriminatory reason for the employment action at issue. *Id.* If the employer is able to articulate a nondiscriminatory reason, the burden shifts back to the employee to prove that the articulated reason for the employment action was not the employer's true reason, but rather, was a pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). At all times, however, the employee retains the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee. *Miranda v. Wis. Power & Light Co.,* 91 F.3d 1011, 1015 (7th Cir.1996).

 In the present case, to establish a prima facie case of discrimination under the ADA and survive summary judgment, Joganic is required to prove that: (1) he is disabled within the meaning of the ADA; (2) his work performance met Powdertech's legitimate expectations; (3) he was discharged; and (4) the circumstances surrounding the discharge indicate it is more likely than not that his disability was the reason for the discharge. *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 922 (7th Cir. 2001). Because Powdertech's motion for

summary judgment focuses on whether Joganic has produced evidence sufficient to show, first, that he is disabled under the ADA and, second, that Powdertech's proffered reason for terminating his employment was a pretext, we will limit our inquiry to the first and fourth elements of Joganic's prima facie case. We first address whether Joganic presented sufficient evidence that he is disabled under the ADA. Second, and assuming that the evidence was sufficient to create a genuine issue of material fact that Joganic is disabled under the ADA, we address whether Joganic produced sufficient evidence to show that Powdertech's proffered reason for the discharge was a pretext for discrimination.

### A.

As previously mentioned, to prevail on a claim of employment discrimination, an ADA plaintiff "must meet the threshold burden of establishing that he is 'disabled' within the meaning of the statute." *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453–1454 (7th Cir.1995). Title I of the ADA prohibits discrimination against "a qualified individual with a disability" based upon such person's disability regarding a term or condition of employment. 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Moreover, the ADA defines "disability," in pertinent part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual...." 42 U.S.C. § 12102(2)(A).

The ADA does not define the terms "physical impairment," "substantially limits," or "major life activities;" however, the regulations promulgated by the EEOC under the ADA provide significant guidance.[2] *Hamilton*, 136 F.3d at 1050. The regulations define "physical impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting [certain] body systems." 29 C.F.R. § 1630.2(h)(1)(2001). "Major life activities," according to the regulations, "mean[ ] functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). For major life activities other than working, the regulations define "substantially limits" as: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). For the major life activity of working, the regulations define "substantially limits" as being:

---

**2.** The United States Supreme Court has explained that: "No agency ... has been given authority to issue regulations implementing the generally applicable provisions of the ADA.... Most notably, no agency has been delegated authority to interpret the term 'disability.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999). The *Sutton* Court, however, stated that "[b]ecause both parties accept these regulations as valid, and determining their validity is not necessary to decide this case, we have no occasion to consider what deference they are due, if any." *Id.* at 480, 119 S.Ct. at 2145. Similarly, in this case, because both parties refer to and rely upon the regulations, at least in part, we assume the validity of the regulations for purposes of deciding this case.

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

Relevant to the determination of whether an individual has a substantial impairment is the nature and severity of the impairment, its expected duration, and its expected permanent long-term impact. *Nedder v. Rivier College,* 944 F.Supp. 111, 115 (D.N.H.1996) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). In addition, the United States Supreme Court has stated that "[t]he definition of disability also requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.' Thus, whether a person has a disability under the ADA is an individualized inquiry." *Sutton,* 527 U.S. at 483, 119 S.Ct. at 2147 (citing 42 U.S.C. § 12102(2)).

Here, Joganic contends that he is disabled as a result of a work-related accident that left him with severe physiological and psychological injuries. As evidence of his disability, Joganic submits that:

> Forty-five percent of his body was burned, his skin is so severely damaged he can't sweat, his pulmonary function is so damaged [he] has very little stamina, gets nauseous and dizzy when he can't sweat, and he suffers from post traumatic syndrome. Just prior to his termination [his doctor] provided yet another document with restrictions for [him.]

Appellee's Brief at 22. In addition, Joganic maintains that he is substantially limited in the major life activities of working, breathing, and performing physical tasks.

Specifically, Joganic contends that his "inability to sweat, lack of stamina, nausea, diminished pulmonary function and psychological problems has and will affect the activities central to his daily life." *Id.* at 23–24.

█ To determine whether Joganic has presented facts that indicate his disability under the ADA, we first examine whether his health problems are impairments that substantially limit any major life function other than working. *Hamilton,* 136 F.3d at 1050. Only if there is no evidence of impairment to the other major life functions is an impairment to working considered. *Id.* First, Joganic alleges that he is disabled in the major life activity of performing manual tasks. To prove a substantial limitation in the major life activity of performing manual tasks, Joganic must show that he has an impairment that prevents or severely restricts him from doing activities that are of central importance to most people's daily lives. *Toyota Motor Mfg., Kentucky, Inc.,* 534 U.S. 184, 122 S.Ct. 681, 691–692, 151 L.Ed.2d 615 (2002). Here, the evidence reveals that Joganic cannot climb stairs, lift barrels, do any strenuous activity, or work in heated conditions. This evidence raises a genuine issue of material fact regarding whether Joganic is disabled, as compared to the average person, in performing activities that are central to most people's daily life.

Second, Joganic maintains that his difficulty in breathing, caused by his pulmonary problems constitutes a substantial impairment to a major life activity and, thus, qualifies as a disability under the ADA. As previously mentioned, the ADA focuses on individual considerations. Thus, the relevant inquiry, here, is whether Joganic is unable to perform the variety of tasks central to most people's daily lives. *Toyota,* 122 S.Ct. at 691–692. However, because Joganic has not established that he

has respiratory problems, which substantially limit his breathing, the evidence is insufficient to establish that he has a disability under the ADA as a result of his breathing difficulties.

■ Lastly, Joganic argues that because of his disability, he is substantially limited in the major life activity of working. Again, according to the regulations, an individual is substantially limited regarding his or her ability to work if he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The evidence, viewed in the light most favorable to Joganic, reveals that, when Joganic returned to work at Powdertech after his accident, he could no longer do his former job of powder processor. Rather, he was assigned to work as a utility operator. In addition, he returned to work with a weight lifting restriction and he was unable to perform all of the tasks associated with his new job description, such as loading barrels onto skids. Because of his inability to sweat and the negative effects associated with such inability, Joganic requested and was transferred to the night shift so that he would not have to work in the heat.

Further, Joganic submitted evidence that since his discharge from Powdertech, he has been unsuccessful in maintaining gainful employment. Indeed, Joganic presented evidence that he:

could not do the work of a construction worker. [He] could not do concrete work, jack hammer work, demolition, carpentry, or mason tender. [He] could not do the physical work required of a corrections officer in a prison. ....
[He] ... has been unable to maintain

any of the jobs he's had since Powdertech fired him.

Appellee's Brief at 25. This evidence raises a genuine issue of material fact regarding whether Joganic is disabled, as defined by the ADA, in the major life activity of working. Accordingly, Joganic has presented sufficient evidence to survive summary judgment that he is disabled under the ADA. Thus, we now turn our analysis to whether Joganic presented sufficient evidence to create a genuine issue of material fact regarding whether Powdertech's proffered reason for the discharge was a pretext.

### B.

■ To establish pretext, an employee must show by a preponderance of the evidence either: "(1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence." *Johnson v. Univ. of Wisconsin–Milwaukee*, 783 F.2d 59, 63 (7th Cir.1986). Where, as here, the employee attempts to show that the employer's proffered rationale is incredible, he need not present any direct evidence of discrimination. *Id.* As the courts have explained, an employee may simply attack the credibility of the employer's proffered reason for termination:

[A] showing that a proffered justification is pretextual may itself be equivalent to a finding that the employer intentionally discriminated. In other words, if [an employee] convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence produced by the [employee] may be sufficient to prove the ultimate fact of discriminatory intent.

*Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 18 (7th Cir.1987), *overruled on other grounds, Coston v. Plitt Theatres, Inc.,* 860 F.2d 834 (7th Cir.1988) (overruling jury instruction regarding willful violation of the ADEA).

Moreover, we do "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). Rather, our inquiry is limited to "whether the employer gave an honest explanation of its behavior." *Id.* Thus, the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers. *Visser v. Packer Eng'g Assoc. Inc.,* 924 F.2d 655, 658–659 (7th Cir.1991).

■ In the present case, Powdertech cited Joganic's violent conduct as its reason for the discharge. We do not find this reason to be a pretext for discrimination. Indeed, the Record indicates that during the time that Joganic worked at Powdertech, Powdertech had a disciplinary policy in effect regarding its employees. Powdertech's disciplinary policy provides as follows:

> In every organization where a large group of people work together, specific rules and regulations are necessary to protect the rights of others and the organization as a whole. Because the safety and comfort of all depend on these rules, violators are subject to reprimands or dismissal depending upon the nature or frequency of the offense.
> Obviously, the following is not intended as a complete list of conduct violations. . . .
>
> \* \* \* \* \* \*

Fighting or attempting bodily harm.

Appellant's Appendix at 66. The disciplinary policy further provides that:

> Except for very serious offenses, most misconduct calls for disciplinary action per the following guidelines. Depending upon the severity of the violation, however, any or all of these steps may be omitted up to discharge of the employee.
>
> \* \* \* \* \* \*
>
> 4. Discharge
>
> Firing generally is the penalty only for the most serious offenses or where all other warnings have been tried and failed to convince the employee to improve.

*Id.* at 67–68.

The Record further reveals that, on May 26, 1994, Joganic "received [a copy of] and under[stood]" this policy. *Id.* at 65. Thus, Powdertech had implemented a policy against, among other things, workplace violence, equipped with provisions for disciplinary measures including discharge before Joganic's misconduct. The cause of Joganic's discharge was not discrimination, but rather, his failure to recognize the acceptable limits of behavior in the workplace. *See, e.g., Hamilton,* 136 F.3d at 1052.

Nevertheless, Joganic argues that Powdertech's proffered reason for his termination was pretextual because Powdertech did not fire Dilts for engaging in the same misconduct. It is well established that a plaintiff may demonstrate pretext by submitting evidence "that other employees, particularly employees not in the protected class, were not fired even though they in engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Braithwaite v. Timken Co.,* 258 F.3d 488, 497 (6th Cir.2001) (quoting *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d

1078, 1084 (6th Cir.1994), *reh'g denied, suggestion for reh'g en banc denied* ). However, Joganic's argument that the disparity between Powdertech's handling of him and Dilts as a result of the fight proves pretext is misplaced because Joganic and Dilts were not similarly situated. Although there is some dispute in the Record regarding who precipitated the fight between Dilts and Joganic, the Record is clear that Joganic was the aggressor in the actual physical altercation. In addition, the Record reveals that as a result of the fight, Dilts sought medical treatment at the emergency room. Accordingly, Joganic and Dilts are not similarly situated. *See, e.g., Braithwaite,* 258 F.3d at 497.

Joganic also contends that proof of Powdertech's discriminatory practice is evidenced by its handling of Dilts's known and continuous violations of Powdertech's alcohol policy. However, a violation of Powdertech's alcohol policy is different than a violation of its disciplinary policy. Accordingly, Joganic has again failed to show that he and Dilts are similarly situated. As such, the fact that Dilts was not fired does not tend to show that Powdertech discriminated against Joganic by discharging him. *See, e.g. id.* Therefore, the facts, even when viewed in the light most favorable to Joganic, do not permit the inference that Powdertech's stated reason for discharging Joganic was a pretext. Joganic has failed to raise a genuine issue of material fact regarding whether Powdertech's proffered reason was a mere pretext. Accordingly, Joganic has failed to establish a prima facie case of discrimination under the ADA and, consequently, the trial court erred by denying Powdertech's motion for summary judgment on Joganic's claim of discrimination under the ADA.

## II.

■ The second issue is whether the trial court erred by denying Powdertech's motion for summary judgment on Joganic's claim of a retaliatory discharge. Powdertech argues that Joganic has failed to prove that his discharge was in retaliation of Joganic's filing of a worker's compensation claim. In general, an employment contract of indefinite duration is presumptively terminable at the will of either party. *Pepkowski v. Life of Ind. Ins. Co.,* 535 N.E.2d 1164, 1168 (Ind.1989). However, in *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), our supreme court created an exception to the employment-at-will doctrine when an employee was discharged for filing a worker's compensation claim. The *Frampton* court stated that when an employee is discharged solely for exercising a statutorily conferred right, an exception to the general rule is recognized, and a cause of action exists in the employee as a result of the retaliatory discharge. *Id.* at 253, 297 N.E.2d at 428. We have acknowledged that:

> one of the reasons for the *Frampton* rule is to prevent the employer from terminating the employment of one employee in a manner which sends a message to other employees that they will lose their job if they exercise their right to worker's compensation benefits. Terminating an employee for filing a claim obviously has a deleterious effect on the exercise of this important, statutory right. The discharge of an employee merely for suggesting she might file a claim has an even stronger deleterious effect.

*Samm v. Great Dane Trailers,* 715 N.E.2d 420, 426 (Ind.Ct.App.1999), *abrogated on other grounds by Martin v. State,* 774 N.E.2d 43 (2002) (internal quotations omitted).

■ The question of retaliatory motive for a discharge is a question for the

trier of fact. *Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 369 (Ind.Ct.App.1999). "Where causation or retaliation is at issue, summary judgment is only appropriate 'when the evidence is such that no reasonable trier of fact could conclude that a discharge was caused by a prohibited retaliation.'" *Markley Enter., Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind.Ct.App.1999) (quoting *Hamann v. Gates Chevrolet Inc.*, 910 F.2d 1417, 1420 (7th Cir.1990), *reh'g denied*). To survive a motion for summary judgment in a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself. *Grover*, 716 N.E.2d at 565. Accordingly, the employee must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext. *Dale*, 709 N.E.2d at 369. In cases of wrongful termination based upon allegations of discrimination, the employee can prove pretext by showing that: (1) the employer's stated reason has no basis in fact; (2) although based on fact, the stated reason was not the actual reason for discharge; or (3) the stated reason was insufficient to warrant the discharge. *Id.* (citing *Motley v. Tractor Supply Co.*, 32 F.Supp.2d 1026 (S.D.Ind.1998)).

Moreover, similar to a claim for discrimination, a plaintiff bringing a retaliation claim must first prove, by a preponderance of the evidence, a prima facie case of discrimination. *Dale*, 709 N.E.2d at 370 n. 3. Then, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for discharge. *Id.* If the employer carries that burden, then the employee has the opportunity to prove, again by a preponderance of the evidence, that the reason offered by the employer is a pretext.

*Id.; see also Fuller v. Allison Gas Turbine Div.*, 670 N.E.2d 64, 68 (Ind.Ct.App.1996).

 In this case, after Joganic alleged that he had been retaliatorily discharged, Powdertech responded that it discharged Joganic because of his involvement in the fight with Dilts. In so doing, Powdertech established a legitimate, nondiscriminatory reason for Joganic's termination; namely, Joganic violated its established disciplinary policy. "It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability." *Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001). The burden then shifted to Joganic to establish that Powdertech's reason is pretextual. *Stalter v. Wal–Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir.1999). Joganic may accomplish this by showing that Powdertech's proffered reason is "factually baseless, [is] not the actual motivation for the discharge in question, or [is] insufficient to motivate the discharge." *Id.*

However, as we discussed in Part I(B) of this opinion, Joganic has failed to present sufficient evidence to create a genuine issue of material fact that Powdertech's reason for the discharge was pretextual. Instead, Joganic has merely submitted evidence that Powdertech did not fire Dilts for engaging in the fight or for violating Powdertech's alcohol policy. However, because Joganic and Dilts are not similarly situated, and because Powdertech's policies on fighting and alcohol use are different, the fact that Powdertech fired Joganic and only reprimanded Dilts does not tend to show that Powdertech engaged in discrimination against Joganic. *See, e.g., Braithwaite*, 258 F.3d at 497. Therefore, again, the facts do not permit the inference that Powdertech's stated reason for

discharging Joganic was a pretext. Because Powdertech was able to present a legitimate, nondiscriminatory reason for Joganic's termination and because Joganic was unable to show that this reason was pretextual, the trial court should have granted Powdertech's motion for summary judgment. *See, e.g., Burmistrz v. City of Chicago,* 186 F.Supp.2d 863 (N.D.Ill.2002).

## III.

The third issue is whether the trial court erred by denying Powdertech's motion for summary judgment on Joganic's claims of negligent and intentional infliction of emotional distress. Powdertech argues that Joganic's claims of emotional distress arising from his discharge are barred as a matter of law because Joganic failed to prove that Powdertech engaged in discriminatory or retaliatory practices against him when it terminated his employment. We agree, and address Joganic's claims of negligent and intentional infliction of emotional distress separately.

## A.

 To maintain a cause of action for negligent infliction of emotional distress under Indiana law, a plaintiff must satisfy the "impact rule." *Alexander v. Scheid,* 726 N.E.2d 272, 283 (Ind.2000). The impact rule originally consisted of three elements: (1) an impact on the plaintiff; (2) that causes physical injury to the plaintiff; (3) that in turn causes the emotional distress. *Id.* This traditional impact rule precluded recovery for the case in which a plaintiff experienced real mental stress in the absence of physical injury. *Id.* Recognizing the policy reasons in support of relaxing the traditional impact rule, our supreme court modified the impact rule as follows:

> [W]hen ... a plaintiff sustains a direct impact by the negligence of another and,

by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, ... such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Shuamber v. Henderson,* 579 N.E.2d 452, 456 (Ind.1991). The modified impact rule maintains the requirement that the plaintiff demonstrate that he or she suffered a direct physical impact. *Conder v. Wood,* 716 N.E.2d 432, 434 (Ind.1999). However, now, the impact need not cause a physical injury to the plaintiff and the emotional trauma suffered by the plaintiff need not result from a physical injury caused by the impact. *Id.*

Moreover, the direct impact is properly understood as being "physical" in nature. *Ross v. Cheema,* 716 N.E.2d 435, 437 (Ind. 1999). Indeed, although the *Shuamber* court removed the physical injury element of the traditional impact rule, it in no way altered the "impact" element of the rule. *Id.* Thus, for purposes of the modified rule, the direct impact sustained by Joganic must necessarily be a "physical" one. It is clear from the facts of this case that Joganic, in being terminated, did not sustain the direct "physical" impact necessary to maintain an action for negligent infliction of emotional distress under the modified impact rule. *See, e.g., id.* (holding that a plaintiff who heard pounding on the door, which resulted in alleged emotional distress, could not maintain an action under the doctrine of negligent infliction of emotional distress because plaintiff did not sustain a direct physical impact); *see also Firstmark Standard Life Ins. Co. v. Goss,* 699 N.E.2d 689, 694–695 (Ind.Ct.App. 1998), *trans. denied.* Accordingly, the tri-

**1264**

al court erred by denying Powdertech's motion for summary judgment on Joganic's claim of negligent infliction of emotional distress.

**B.**

██ Joganic further claims that Powdertech intentionally inflicted emotional distress upon him when it fired him. The tort of intentional infliction of emotional distress is defined as: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991) (quoting Restatement (Second) of Torts § 46 (1965)). The *Cullison* court explained that: "It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Id.* Moreover, under Indiana law, conduct is extreme and outrageous:

> only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind.Ct.App.1996) (quoting Restatement (Second) of Torts § 46 (1965), *reh'g denied*).

██ Here, Joganic's claim of intentional infliction of emotional distress fails as a matter of law because Powdertech's act of firing him pursuant to its disciplinary policy does not constitute extreme and outrageous conduct. As we have previously discussed, the Record reveals that once Powdertech learned of the fight between Joganic and Dilts—a fight that sent Dilts to the emergency room—it conducted an investigation and, ultimately, discharged Joganic according to its disciplinary policy. Powdertech's actions did not exceed all possible bounds of decency, nor could they be regarded as atrocious or utterly intolerable in a civilized community. As such, Powdertech was entitled to summary judgment on Joganic's intentional infliction of emotional distress claim. *See, e.g., Conwell*, 667 N.E.2d at 777.

For the foregoing reasons, we reverse the trial court's denial of Powdertech's motion for summary judgment and remand with instructions to enter summary judgment in favor of Powdertech on Joganic's claims of discrimination, retaliatory discharge, and emotional distress.

Reversed and remanded.

FRIEDLANDER, J., and NAJAM, J., concur.