## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2018, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

John C. Theisen
Nathaniel O. Hubley
Alex S. Schreiber
Theisen & Associates, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Mitchell L. Fraley
Shankman Leone, P.A.
Tampa Florida

Peter A. Meyer
Faegre Baker Daniels, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy W. Shackleford, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> D&W Fine Pack, LLC, <br> *Appellee-Defendant.* | September 5, 2018 <br><br> Court of Appeals Case No. 18A-CT-489 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Stanley A. Levine, Judge <br><br> Trial Court Cause No. 02D03-1508-CT-351 |

**Bradford, Judge**

# Case Summary

[1]    In February of 2014, Timothy Shackleford injured his shoulder while working at D&W Fine Pack, LLC, and was placed on light duty. Shackleford filed a worker's compensation claim and, in June of 2014, underwent surgery. Shackleford continued on light duty and eventually participated in a transitional return-to-work program ("RTW Program"). In late October of 2014, the doctor retained by D&W determined that Shackleford had reached maximum medical improvement ("MMI"). When Shackleford obtained a second opinion, that doctor recommended that he undergo a second surgery. Shackleford sought approval from D&W for the second surgery but never received it and was terminated in mid-December of 2014. Shackleford sued D&W, claiming, *inter alia*, that he was discharged in retaliation for the pursuit of his worker's compensation claim. D&W moved for summary judgment on the retaliatory discharge claim, and the trial court granted the motion. Shackleford appeals, contending that he designated sufficient evidence to generate a genuine issue of material fact regarding the question of retaliatory discharge. Because we agree, we reverse and remand for trial.

# Facts and Procedural History

[2]    On October 7, 2013, Shackleford began working at D&W, a manufacturer of plastic food containers, as an extrusion operator. On February 22, 2014, Shackleford was injured when he was moving a roll of material with the assistance of an overhead hoist when the hoist dropped the roll four inches,

injuring his shoulder. Shackleford reported the injury the same day, and D&W human resources generalist Sylvester Thomas completed a report that was filed with the Indiana Worker's Compensation Board. Shackleford was taken to Redi-Med for treatment and later referred to Dr. Gregory Sassmannshausen at Fort Wayne Orthopedics. From February 22 to June 19, 2014, Shackleford was assigned light duty which included no use of his left arm and involved inspection of product from the production line or that had been returned by a customer. In approximately May of 2014, according to Shackleford, Mark Lebert, one of his supervisors, went from speaking with him multiple times a day to completely ignoring him. On June 19, 2014, Dr. Sassmannshausen performed shoulder surgery on Shackleford, after which he returned to light duty at D&W.

[3] On July 23, 2014, Thomas met with Shackleford and issued Shackleford three write-ups at the same time for attendance, including a verbal warning, a first written warning, and a second written warning. Shackleford disputed the write-ups, claiming some of the attendance violations had been the result of physical therapy appointments that he was required to attend during work hours. Thomas's response was that it was a no-fault policy. As it happens, D&W's attendance editor spreadsheet processed on July 22, 2014, reflects that Shackleford was given a verbal warning on January 21, 2014, the first written warning on February 10, 2014, and the second written warning on July 17, 2014. When asked what had prompted him to issue Shackleford three write ups

on July 23, 2014, Thomas testified that the incidents had not been brought to his attention before that time.

[4] According to Shackleford, while Shackleford was doing light duty work at D&W, reinspection department manager John Lindsey told Shackleford that he really "f**** up" and told him at least three times that D&W "will never put you back in the extrusion department." Appellant's App. Vol. II p. 170. After returning to light duty work after his surgery, Shackleford was allegedly told by supervisor Dave Cuney that he needed to perform work outside of his restrictions. Shackleford told Cuney that the work was outside of his restrictions but was told that he if did not do the work he would have to leave. Shackleford started doing the work ordered by Cuney and, after lifting four boxes, reinjured his shoulder and required medical attention at Redi-Med.

[5] On September 15, 2014, Thomas had Shackleford sign a transitional return-to-work agreement, which involved off-site work during his rehabilitation. The off-site work was at ReNew Retail, which is a thrift store like a Goodwill. Shackleford started the RTW Program on about September 4, 2014, and the ninety-day program was set to expire December 4, 2014. Every Friday while Shackleford was working at ReNew, he was required to take his time card to D&W so that it would be recorded and so he would be paid by D&W. During one of these Friday visits to D&W, extrusion department manager Mark Leiber allegedly told Shackleford that "he didn't think there [was] anything wrong with [his] shoulder." Appellant's App. Vol. II p. 174.

[6] On October 29, 2014, Shackleford was determined to be at MMI by Dr. Sassmannshausen. Dr. Sassmannshausen indicated permanent work restrictions of no lifting, pushing, or pulling of more than fifteen pounds and no overhead lifting of more than five pounds. Shackleford disagreed that he was at MMI "[b]ecause [he] was still having like a catch in [his] shoulder." Appellant's App. Vol. II p. 174. Thomas recalls Shackleford informing him that he had found a different doctor and was interested in getting a second opinion.

[7] On November 24, 2014, Shackleford was evaluated by Dr. David Conner at Ortho NorthEast for a second opinion, and Shackleford gave Dr. Conner's report to Thomas later that day. Shackleford told Thomas that he could get his restrictions lifted if he underwent the surgery recommended by Dr. Conner. Thomas discussed the report with Shackleford and recalled that he also discussed it with human resources manager Kelli Tesic. Thomas recalled telling Shackleford to follow up with Zurich North American, D&W's worker's compensation insurance company, about Dr. Conner's findings.

[8] Sometime between November 24, 2014 and December 16, 2014, Shackleford recalls Thomas telling him that he was "creating a hardship for the company." Appellant's App. Vol. II p. 175. Shackleford also felt as though Thomas "didn't want to listen about a second opinion." Appellant's App. Vol. II p. 175. On December 15, 2014, Shackleford met with Thomas. Shackleford asked Thomas whether D&W had made decisions about extending his transitional work period at ReNew Retail or about his second surgery and inquired about

taking FMLA ("the Family and Medical Leave Act") leave. Thomas recalls informing Shackleford that he had not heard anything from D&W management about extending the transitional work period or about how D&W wanted to proceed regarding the second surgery. After meeting with Shackleford on December 15, 2014, Thomas met with Tesic regarding Shackleford's questions. Shackleford designated evidence that during the meeting between Thomas and Tesic, the decision was collectively made to recommend to the human resources director that D&W terminate Shackleford's employment.

[9] On December 16, 2014, Shackleford was notified that his employment was terminated on the grounds that he was at MMI, his work program had expired, and D&W could not accommodate his restrictions. On December 19, 2014, D&W's Human Resources Department sent Shackleford a holiday card, which was allegedly opened by Shackleford's attorney. The holiday card contains signatures of several employees as well as the handwritten words "Moron" and "Dumby[.]" Appellant's App. Vol. II p. 37. At is happened, Shackleford underwent a second surgery on February 11, 2015. By April 30, 2015, Shackleford's shoulder was feeling "great[,]" and he was released with no restrictions. Appellant's App. Vol. II p. 183.

[10] On August 27, 2015, Shackleford filed a complaint against D&W, alleging retaliatory discharge and interference with an FMLA claim, in which he alleged that he had been terminated because he had been injured and had sought to exercise his rights to worker's compensation benefits. D&W removed the case

to federal court for resolution of the FMLA claim, and, on January 25, 2017, the district court entered summary judgment in favor of D&W on that claim.

[11]     The case returned to state court, and, on July 11, 2017, D&W moved for summary judgment on the retaliatory discharge claim. On August 10, 2017, Shackleford filed a brief and designated evidence in opposition to D&W's summary judgment motion. On October 17, 2017, the trial court held a hearing on D&W's summary judgment motion and, on January 29, 2018, granted it.

# Discussion and Decision

## *Standard of Review*

[12]     Shackleford contends that the trial court erred when it entered summary judgment in favor of D&W. When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id*.; Ind. Trial Rule 56(C). To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. Once the moving party has met this burden with a *prima facie* showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id*. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id*. "In

determining whether there is a genuine issue of material fact precluding summary judgment, all doubts must be resolved against the moving party and the facts set forth by the party opposing the motion must be accepted as true." *Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 438–39 (Ind. Ct. App. 1990), *trans. denied*.

[13] Shackleford contends that the trial court erred in finding that there was no genuine issue as to whether D&W terminated him in retaliation for pursuing his worker's compensation claim.

> "In general, an employment contract of indefinite duration is presumptively terminable at the will of either party." *Stillson v. St. Joseph Cnty. Health Dep't*, 22 N.E.3d 671, 679 (Ind. Ct. App. 2014) (citing *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1168 (Ind. 1989)), *trans denied* (2015). However, it is well settled in Indiana that an action for retaliatory discharge exists when an employee is discharged for exercising a statutorily conferred right, such as filing a worker's compensation claim. *Purdy v. Wright Tree Serv., Inc.*, 835 N.E.2d 209, 212 (Ind. Ct. App. 2005), *trans. denied* (2006). In *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 251–53, 297 N.E.2d 425, 427–28 (1973), our supreme court held that an employee-at-will who was discharged for filing a worker's compensation claim could file an action for retaliatory discharge against her employer because the Worker's Compensation Act was designed for the benefit of employees, and as such, its humane purpose would be undermined if employees were subject to reprisal without remedy solely for exercising that statutory right.
>
> This Court has outlined and consistently followed a three-step approach to a retaliatory discharge *Frampton* claim under Indiana law. First, the employee must prove, by a preponderance of the evidence, a prima facie case of discrimination. *Powdertech, Inc. v.*

*Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002). Specifically, the employee must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination. *Id*. Second, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the discharge. *Id*. If the employer carries its burden, the employee then has the opportunity to prove that the reason cited by the employer is a pretext. *Id*. He may establish pretext by showing that the reasons are (1) factually baseless; (2) not the actual motivation for his discharge; or (3) insufficient to motivate the discharge. *Id*. The question of whether a retaliatory motive exists for discharging an employee is a question for the trier of fact. *Id*. at 1261–62.

*Best Formed Plastics, LLC v. Shoun*, 51 N.E.3d 345, 351 (Ind. Ct. App. 2016), *trans. denied*.

[14] "Where causation or retaliation is at issue, summary judgment is only appropriate when the evidence is such that no reasonable trier of fact could conclude that a discharge was caused by a prohibited retaliation." *Markley Enters. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999). "But to survive a motion for summary judgment in a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself." *Id.* "The evidence must directly or indirectly support the necessary inference of causation between the filing of a worker's compensation claim and the termination." *Id.* "Examples of indirect proof of retaliation include: (1) proximity in time between the two acts, and (2) an employer's proffered reason for termination which is patently inconsistent with the evidence before the court." *Id.*

> In cases of wrongful termination based upon allegations of discrimination, pretext can be proven by showing that the employer's stated reason has no basis in fact; that although based on fact, the stated reason was not the actual reason for discharge; or that the stated reason was insufficient to warrant the discharge.

*Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 369 (Ind. Ct. App. 1999).

[15] D&W argues that the amount of time that elapsed between Shackleford's initial filing and his discharge—approximately ten months—defeats his claim as a matter of law. While Shackleford concedes that the gap between the injury and his discharge, standing alone, tends to negate any allegation of retaliatory intent, he contends that additional designated evidence nonetheless tends to establish that it existed. As we have recognized, the mere passage of time is not enough to defeat a *Frampton* claim when other designated evidence casts doubt on the employer's motives. *See Markley Enters.*, 716 N.E.2d at 565 ("[W]e disagree with the Company that the six month time period which elapsed between Grover's filing of his worker's compensation claim and his termination is fatal to his claim for retaliatory discharge. Although a closer temporal connection between the two events often supports an inference of retaliatory intent, a six month lapse has also sufficed *when the other evidence before the court calls into doubt the employer's reasons for discharge*.") (emphasis added). Under the circumstances of this case, we agree with Shackleford that the designated evidence has generated sufficient doubt about D&W's motives to survive a summary judgment motion.

[16]     Shackleford has designated evidence tending to show that D&W's attitude toward him changed around the time of his June of 2014 surgery, deteriorated as time passed, and that he was terminated soon after requesting another surgery and being told that he was creating a "hardship" for the company. Shackleford was injured in February of 2014 and placed on light work duty as a result. Shackleford designated evidence that other D&W employees began to treat him differently about the time of his first surgery in June of 2014. This included evidence that (1) a supervisor went from speaking with him multiple times a day to ignoring him altogether; (2) he was disciplined for previous absenteeism shortly after his surgery, receiving three write-ups; (3) he was told by the manager of his light-duty department that he had "f***** up" and that he would never be put back into the extrusion department; and (4) a supervisor pressured him into work outside of his restrictions, aggravating his injury. Shackleford designated evidence that a few months later, the extrusion department manager told Shackleford that he did not think that there was anything wrong with his arm. This evidence is sufficient to raise inferences that there was general skepticism at D&W regarding the extent of Shackleford's injury and that at least some members of management and supervisory staff were attempting to cause him to resign.

[17]     Shackleford also designated evidence tending to show that the situation worsened when he sought additional treatment for his shoulder. After Dr. Sassmannshausen determined Shackleford to be at MMI in late October, Shackleford designated evidence which tends to show increasing resistance to

his attempts to seek a second opinion and/or obtain additional treatment, with discharge coming soon thereafter. After Shackleford obtained a second opinion, which included a recommendation for further surgery, Shackleford designated evidence that Thomas told him that he was creating a hardship for the company. D&W never did directly respond to Shackleford's requests for the approval of additional treatment for his shoulder, and within a few weeks of Thomas's alleged statement, Shackleford had been terminated. We conclude that the designated evidence is sufficient to generate a genuine issue of material fact as to whether D&W discharged Shackleford in retaliation for pursuing his worker's compensation rights.

[18] We find D&W's counter-arguments to be unpersuasive. First, D&W relies on *Cummins v. Kroger Co.*, Cause No. 54A01-0603-CV-113 (Ind. Ct. App. March 30, 2007), *trans. denied*, for the proposition that the mere passage of ten months should be sufficient to defeat Shackleford's *Frampton* claim. *Cummins*, of course, as an unpublished memorandum decision, has no precedential value. Moreover, we are not entirely persuaded by the *Cummins* court's conclusion that a *Frampton* claim can only be based on direct retaliation for filing a worker's compensation claim—but not for pursuing one as time passes. Employees unquestionably have the statutory right to pursue continuing treatment for workplace injuries, and *Frampton* made it clear that "when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule [of employment-at-will] must be recognized." 297 N.E.2d at 428.

[19]    D&W also points to the fact that it discharged Shackleford after Dr. Sassmannshausen determined him to be at MMI, seeming to suggest that this conclusively establishes that D&W legitimately discharged Shackleford. While it may be true that Dr. Sassmannshausen's determination makes it more likely that D&W discharged Shackleford for a legitimate reason, it is hardly conclusive, especially in light of the fact that D&W also had Dr. Conner's opinion, which contradicted the MMI determination. The significance of Dr. Sassmannshausen's MMI determination is a question best left for a jury. Moreover, to the extent that the MMI determination tends to support the conclusion that D&W had a legitimate reason for discharge, Shackleford does not dispute that D&W has articulated a legitimate reason for his discharge. Shackleford contends, however, that other designated evidence could support a finding that the articulated reason was a pretext, a contention with which we agree.

[20]    D&W also seems to contend that any comments directed at Shackleford that might seem to indicate hostility or skepticism were not made by decision-makers and are therefore irrelevant as a matter of law. "Stray remarks may be evidence of intentional discrimination if they are sufficiently connected to the employment decision." *Purdy*, 835 N.E.2d at 218 (citing *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004)). "In other words, the remarks must be made by the decisionmaker or those who influence the decisionmaker and must be made close in time to the adverse employment decision." *Id.* At the very least, Shackleford designated evidence that Thomas told him that he

had created a "hardship" for D&W and that Thomas was, within a few weeks of that alleged comment, directly involved in the decision to terminate him. Moreover, given that Shackleford alleges comments and/or actions by two department managers and two supervisors, we cannot say that no reasonable person could infer that these persons were connected to the decision-making process in some way.

[21] Finally, D&W identifies several other pieces of designated evidence that it claims are suspect, including evidence of the remarks allegedly made by other employees, orders to work outside of restrictions, the write-ups by Thomas for attendance violations, and the holiday card. Without going into detail, D&W's arguments are nothing more than an invitation for us to evaluate the truth and/or significance of these pieces of designated evidence, one that we decline. As mentioned, we must assume at this stage of the proceedings that all of the facts designated by Shackleford are true and resolve all doubts in his favor. *See Lawlis*, 562 N.E.2d at 438–39. As for the significance of various pieces of evidence, such questions are best left for a jury.

[22] In summary, we conclude that Shackleford has established that a genuine issue of material fact exists as to whether D&W discharged him in retaliation for pursuing his worker's compensation claim. We therefore reverse the trial court's entry of summary judgment in favor of D&W and remand for trial.

[23] We reverse the judgment of the trial court and remand with instructions.

Bailey, J., and Mathias, J., concur.