**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**KEVIN W. BETZ**
**JAMIE A. MADDOX**
Betz + Blevins
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MARSHA VOLK BUGALLA**
**JULIA BLACKWELL GELINAS**
**LUCY R. DOLLENS**
Frost Brown Todd LLC
Indianapolis, Indiana

FILED
Jan 19 2012, 9:36 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BETH E. MYERS, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 58A05-1104-CT-193 |
| | ) | |
| RISING SUN-OHIO COUNTY | ) | |
| COMMUNITY SCHOOL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE OHIO CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 58C01-0908-CT-5

**January 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Midway through her first year as a special education teacher in the Rising Sun School Corporation ("the School District"), Beth E. Myers was injured on the job and filed a worker's compensation claim. She was absent from school intermittently in the winter months due to the migraine headaches that resulted from her injury. The School District compiled a list of conduct violations that Myers committed on the days that she was present at school and during her absences, i.e., failure to leave adequate lesson plans for the substitute teachers as required by her code of conduct. She was suspended with pay and eventually was terminated following a hearing.

Myers filed a complaint against the School District asserting that the School District wrongfully discharged her in retaliation for her worker's compensation claim. She also sought damages for intentional infliction of emotional distress. The School District filed a motion for summary judgment, which the trial court granted.

Myers now appeals. Finding that she has failed to establish retaliatory discharge as a matter of law and has waived argument on her intentional infliction of emotional distress claim, we affirm the trial court's entry of summary judgment.

**Facts and Procedural History**

In August 2008, Myers began working for the School District as a special education teacher pursuant to a regular teacher's contract. On December 18, 2008, she received a

positive evaluation from her building principal, Gloria Holland.[1]  The next day, she hit her head on a bookshelf at school and had to be treated at a nearby hospital.  That same day, she filed a worker's compensation claim, stating that her injury caused her to experience severe migraines and post-concussion syndrome.

After the holiday break, Myers missed eight days of school due to migraines.  In addition, the School District had five days of weather-related closings.  On February 6, 2009, after Myers had returned to work intermittently for thirteen days, Holland issued a suspension letter to Myers, citing "Professional Conduct Concerns."  Appellant's App. at 204.  The letter listed sixteen allegations of Myers's inappropriate and unprofessional conduct:

1.    On or about January 15, 2009[,] you physically carried a student across the hallway by his ankles.  The Board of School Trustees considers the inappropriate and dangerous handling of a student to be relevant to the school corporation's interest.

2.    On or about January 2, 2009, during a meeting with fellow professionals in trying to develop a behavior plan you gave no suggestions and dismissed every idea as unworkable without being tried.  The Board of School Trustees considers the inability to work with fellow professionals in developing behavior plans relevant to the school corporation's interest.

3.    On or about January 5, 2009, your report card grades were not on report cards as instructed by Principal Holland.  The Board of School Trustees considers not following directions given by the building principal to be relevant to the school corporation's interest.

4.    On or about January 5, 2009, a teaching assistant was unable to locate the grade book in order to put on grades.  You told the teaching assistant to give the students the same grades as they received the last

---

[1]  We disagree with Myers's characterization of the December 2008 evaluation as "excellent," since it expressed the administration's concerns regarding her truthfulness as well as her relationships with coworkers.

3

grading period. The Board of School Trustees considers the lack of preparedness to be relevant to the school corporation's interest.

5. On or about January 13, 2009, you misrepresented to a second grade teacher that Ms. Holland had approved a schedule change when in fact the change did not occur. The Board of School Trustees considers the misrepresenting of facts to be relevant to the school corporation's interest.

6. On or about January 19, 2009, you did not follow the procedure outlined by Assistant Principal Huff in dealing with a student. Instead of following the procedure, you sent the student directly to Ms. Huff. The Board of School Trustees considers the failure to following [sic] directions from a building administrator to be relevant to the school corporation's interest.

7. On or about January 19, 2009, you instructed the teaching assistants not to follow the procedures outlined by Assistant Principal Huff but to send students to Ms. Huff immediately. The Board of School Trustees considers you encouraging the teaching assistants to disobey instructions given by a building administrator to be relevant to the school corporation's interest.

8. On or about January 20, 2009, you were absent from school and left no lesson plans. The Board of School Trustees considers the lack of lesson plans to be relevant to the school corporation's interest.

9. On or about January 21, 2009, you were observed by the Assistant Director of Special Education. The Assistant Director noted that no academic skills were taught or practiced. The Board of School Trustees considers the lack of teaching academic skills to be relevant to the school corporation's interest.

10. On or about January 22, 2009, you were absent from school and left no lesson plans. The Board of School Trustees considers the lack of lesson plans to be relevant to the school corporation's interest.

11. On or about January 23, 2009, you were absent from school and left no lesson plans. The Board of School Trustees considers the lack of lesson plans to be relevant to the school corporation's interest.

4

12. On or about January 26, 2009, you were absent and left partial lesson plans that covered no more than two hours of the day. The Board of School Trustees considers the lack of complete lesson plans to be relevant to the school corporation's interest.

13. On or about January 26, 2009, it was reported that basic skills had not been covered in your class since the beginning of the semester. The Board of School Trustees considers the lack of teaching academic skills to be relevant to the school corporation's interest.

14. On or about February 2, 2009, you were absent and left partial lesson plans that covered no more than two hours of the day. The Board of School Trustees considers the lack of complete lesson plans to be relevant to the school corporation's interest.

15. On or about February 3, 2009, you were absent and left partial lesson plans that covered no more than two hours of the day. The Board of School Trustees considers the lack of complete lesson plans to be relevant to the school corporation's interest.

16. On or about February 5, 2009, you were absent and left partial lesson plans that covered no more than two hours of the day. The Board of School Trustees considers the lack of complete lesson plans to be relevant to the school corporation's interest.

*Id*. at 216-18.

Upon receipt of this letter, Myers was suspended immediately with pay. On February 19, 2009, the superintendent sent Myers a termination letter that contained not only the foregoing allegations of insubordination, neglect of duty, and incompetence, but also the following allegations:

17. Since February 6, 2009, and through this date you have willfully violated my direct order to "turn in your grade book immediately."

18. Emergency lesson plans were not turned into the office as directed by Ms. Holland on or about August 13, 2009 [sic].

5

19. On or about October 21, 2008, in violation of the "Teacher Job Description" you failed to provide a safe learning environment by placing zip ties on the playground gates, which in effect prevented egress from the playground.

20. Prior to December 2008, in violation of the "Teacher Job Description" [you] failed to provide a safe learning environment by placing special needs students on a motorcycle in order to take their picture.

*Id*. at 452-53.

Myers requested a hearing before the Board of School Trustees ("the Board"). On March 11 and March 13, 2009, the Board heard evidence from witnesses. Thereafter, the School District terminated Myers's employment contract.

On August 25, 2009, Myers filed a complaint against the School District, alleging retaliatory discharge and both intentional and negligent infliction of emotional distress.[2] In her deposition, Myers did not dispute the conduct listed in her termination letter, but offered justifications for it. On September 23, 2010, the School District filed a motion for summary judgment, and Myers filed a response in opposition. The trial court granted the School District's motion following a hearing. Myers now appeals.[3] Additional facts will be provided as necessary.

---

[2] Myers eventually agreed to dismiss her claim for negligent infliction of emotional distress.

[3] Myers has filed a motion for oral argument, which we deny in an order issued contemporaneously with this decision.

6

**Discussion and Decision**

Myers challenges the trial court's decision to grant summary judgment in favor of the School District.[4] Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 675 (Ind. Ct. App. 2007), *trans. denied*. We review the trial court's decision to grant or deny summary judgment using the same standard as the trial court, in which all factual inferences must be construed in favor of the non-moving party and all doubts as to the existence of a material factual issue must be resolved against the moving party. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010). If the moving party fails to make a prima facie showing of no genuine issue of material fact and appropriateness of judgment as a matter of law, then summary judgment is precluded regardless of whether the non-moving party designates facts and evidence in response. *Clarian Health Partners, Inc. v. Wagler*, 925 N.E.2d 388, 392 (Ind. Ct. App. 2010), *trans. denied*. However, once the moving party has carried its initial burden, the non-moving party must come forward with sufficient evidence demonstrating the

---

[4] We disagree with the School District's characterization of this appeal as an appeal from the action of an administrative agency.

existence of genuine factual issues, and if she fails to do so, then summary judgment should be granted. *Mahan*, 862 N.E.2d at 675-76.

## *I. Retaliatory Discharge*

Myers asserts that genuine issues of material fact exist to preclude summary judgment on her retaliatory discharge claim. An action for retaliatory discharge exists when an employee is discharged for exercising a statutorily conferred right, such as filing a worker's compensation claim. *Purdy v. Wright Tree Serv., Inc.*, 835 N.E.2d 209, 212 (Ind. Ct. App. 2005), *trans. denied* (2006). In *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 251-53, 297 N.E.2d 425, 427-28 (1973), our supreme court held that an employee-at-will who was discharged for filing a worker's compensation claim could file an action for retaliatory discharge against her employer because the Worker's Compensation Act was designed for the benefit of employees, and as such, its humane purpose would be undermined if employees were subject to reprisal without remedy "solely" for exercising that statutory right.[5]

In *Dale v. J.G. Bowers*, *Inc.*, 709 N.E.2d 366 (Ind. Ct. App. 1999), another panel of this Court interpreted *Frampton*'s use of the word "solely" to mean that "any and all reasons for discharge must be unlawful in order to sustain a claim for retaliatory discharge." *Id*. at

---

[5] The School District argues that *Frampton* applies only to at-will employees and not to employees, such as Myers, who work under employment contracts. In response, Myers cites as persuasive *Coolidge v. Riverdale Local School District*, 797 N.E.2d 61, 65 (Ohio 2003), in which the Supreme Court of Ohio cited and applied *Frampton* to a contracted teacher's claim for retaliatory discharge, stating that teachers should not be afforded "less protection against wrongful discharges than the common law generally affords to at-will employees." *Id*. We agree with the *Coolidge* court and therefore apply *Frampton*'s analysis in the present appeal.

369. In reaching this conclusion, the *Bowers* court adopted the reasoning of the United States District Court for the Southern District of Indiana in *Watkins v. Sommer Metalcraft Corp.*, 844 F. Supp. 1321 (S.D. Ind. 1994), holding that "the word 'solely' as used in *Frampton* and its progeny was used to mean *without an independent lawful reason* which would justify the otherwise unlawful action." *Bowers*, 709 N.E.2d at 369 (quoting *Watkins*, 844 F. Supp. at 1326) (emphasis added).

The question of whether a retaliatory motive exists for discharging an employee is a question for the trier of fact. *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1261-62 (Ind. Ct. App. 2002). Thus, summary judgment is appropriate only "when the evidence is such that no reasonable trier of fact could conclude that [the] discharge was caused by a prohibited retaliation." *Id*. at 1262 (citations and internal quotation marks omitted). To survive a motion for summary judgment by the employer, the employee must show more than her filing of a worker's compensation claim and the discharge itself; instead, she "must present evidence that directly or indirectly implies the necessary inference of causation between the filing of the worker's compensation claim and the termination," i.e., proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext. *Id*.

As in a wrongful termination discrimination case, a plaintiff bringing a retaliatory discharge claim must first present a prima facie case of discrimination. *Id*. At that point, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the discharge. *Id*. If the employer carries its burden, then the employee has the opportunity to prove that the reason cited by the employer is a pretext. *Id*. She may establish pretext by

9

showing that the reasons are (1) factually baseless; (2) not the actual motivation for her discharge; or (3) insufficient to motivate the discharge. *Id*.

Here, the School District provided Myers with a lengthy list of alleged violations, including: failing to follow stated policies concerning lesson plans and grading; making misrepresentations to her aides and to administration; and holding a nonverbal autistic student upside-down by his ankles and carrying him across the hall. With respect to the incident with the autistic student, Myers claims that holding him upside-down was a legitimate therapeutic technique to calm him down and that the teacher's aide had used the technique with impunity. To the extent she cites the aide's conduct as evidence of discrimination by the School District, we note that the aide's job was to follow the classroom teacher's instructions and that the aide never carried a student across the hall while holding him upside-down. Thus, Myers and the aide were not "identical … in all relevant aspects." *Sellars v. City of Gary*, 453 F.3d 848, 850 (7th Cir. 2006) (citations and quotation marks omitted).

Moreover, even assuming for argument's sake that Myers had established discrimination, the list she received from the School District articulates legitimate nondiscriminatory reasons for her discharge, i.e., endangering a student/students, making misrepresentations to administration and instructing others to make similar misrepresentations, and failing to provide adequate lesson plans during eight days of absence, which led to eight days of essentially structureless class time. As such, we conclude that the

10

School District cited legitimate nondiscriminatory reasons for discharging Myers sufficient to shift to her the burden of proving pretext.

In making her pretext claim, Myers does not refute the factual basis for the allegations against her. Instead, she cites the close proximity between the filing of her worker's compensation claim and her discharge, as well as the sheer number of alleged violations that she accumulated in a short amount of time as evidence that the articulated reasons were not the actual motivation for her discharge. She also notes that the lengthy list of violations came shortly after her "excellent" evaluation. She was injured on December 19, 2008, and filed her worker's compensation claim on that date. After the holiday break, she returned to school. However, between five snow days and eight absences due to migraines, she worked only thirteen days between the date of her claim and February 6, 2009, the date that she received notice of her suspension. Seventeen of her twenty alleged violations occurred during that thirteen-day period. In this vein, she claims that she could not possibly have engaged in so many violations in such a short period. We disagree and note that seven of the violations involve omissions relating to the days when she was *not* at work, namely, in failing to leave complete, or sometimes *any*, lesson plans. Three of her alleged violations involve failures relating to grade reporting and/or grade book insufficiencies, which again, were actions not limited to actual days spent at school. Also, to the extent that she cites the three allegations that predate her injury and December 18, 2008 evaluation, we note that the superintendent only learned of the incidents involving the motorcycle and the playground gate after Myers's suspension. Moreover, Myers admitted (and the security video confirmed)

11

that she carried the nonverbal autistic student upside-down by his ankles across the hall. Although she advanced an argument that such conduct was recognized as a calming technique or "sensory diet," the occupational therapist in charge of training the special education teachers and developing specialized programs for the students stated that she herself would never engage in such an activity and that she never trained Myers to engage in it either. Appellant's App. at 242-43. Finally, we note that even though this dangerous activity would be sufficient, standing alone, to justify disciplinary action, the School District emphasized that Myers was terminated because of her accumulation of numerous violations of the code of conduct.

In sum, Myers has failed to demonstrate that the allegations were not factually-based, were not the actual reason for her discharge, and were insufficient to motivate her discharge. As such, we conclude that she has failed to establish pretext as a matter of law. Consequently, summary judgment was appropriate on her retaliatory discharge claim.

## II. Intentional Infliction of Emotional Distress

Myers also contends that the trial court erred in granting summary judgment in favor of the School District on her claim for intentional infliction of emotional distress. However, in her appellant's brief, she fails to present any argument on this issue. Instead, she addresses this claim for the first time in her reply brief. As such, she has waived the issue for review per Indiana Appellate Rule 46(A)(8), which states that the argument section of the appellant's brief must contain the appellant's contentions on each issue, supported by cogent reasoning. *See* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply

12

brief."). *See also Ryan v. Brown*, 827 N.E.2d 112, 118 (Ind. Ct. App. 2005) (finding that claim was waived for review when raised for first time in reply brief).

Affirmed.

MAY, J., and BROWN, J., concur.