Randy TONY, Appellant–Plaintiff,

v.

ELKHART COUNTY, Appellee–
Defendant.

No. 57A05–0906–CV–312.

Court of Appeals of Indiana.

Dec. 17, 2009.

Patrick F. O'Leary, Goshen, IN, Attorney for Appellant.

Jeffrey L. Lund, Michael F. Deboni, Yoder Ainlay Ulmer & Buckingham, Goshen, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Randy Tony appeals the trial court's grant of summary judgment in favor of Elkhart County ("the County"). We reverse and remand.

### Issue

Tony raises four issues, which we combine and restate as whether the trial court properly concluded as a matter of law that Tony was not constructively discharged from his employment by the County in retaliation for filing worker's compensation claims.

### Facts[1]

■ The evidence most favorable to Tony as summary judgment nonmovant is that he worked for the County Highway Department between January 4, 1993, and October 25, 2002. Tony's immediate supervisor was Ken Kirchner. In June 1998, Tony injured his right arm when throwing a tree limb into the back of a truck. Tony filed a worker's compensation claim for this injury. Eventually, on December 19, 2000, Tony underwent three surgeries on his injured arm by a doctor chosen by the County's worker's compensation insurer.

Shortly before Tony underwent these surgeries, Kirchner began calling Tony names such as "trouble boy," "disabled," "whinny [sic] butt," and "worthless." Appellant's App. p. 46. After Tony's surgeries, he complained to the County Commissioners about Kirchner's comments. The Commissioners told Tony that "they didn't want to hear any more" about his complaints. *Id.* at 73. Kirchner himself told Tony, "don't be running to the Commissioners, ever again!" *Id.* at 46. Additionally, a representative of the union to which Tony belonged told him, "There's to be no more complaints, Tony!" *Id.*

Tony also heard from others that Kirchner and another supervisor, Bob Ganger, were telling Tony's co-workers that he was a "faker." *Id.* Kirchner also told Tony in March 2001, "you're no longer employed here," although in fact Tony was not fired.

---

1. The appendices filed by both parties contain various documents, affidavits, depositions and parts thereof without indication of whether this evidence was designated to the trial court. We remind the parties here and practitioners generally that when reviewing summary judgment rulings, we must review only the evidence properly designated to the trial court. *Rood v. Mobile Lithotripter of Indiana, Ltd.*, 844 N.E.2d 502, 506 (Ind.Ct. App.2006). To assist this review, parties should include in their appendices the desig-

nations of evidence that were filed with the trial court, however it was indicated. *See Filip v. Block*, 879 N.E.2d 1076, 1081 (Ind. 2008) (noting Indiana Trial Rule 56(C) does not specify how or where evidence is to be designated). Because neither the County nor Tony claim that undesignated material has been included in the appendices, however, we will presume for purposes of this appeal that all of the material in the appendices was properly designated.

*Id.* That same month, Kirchner told Tony that Ganger had flown into a rage, throwing chairs and kicking trash cans, when Tony's name was mentioned. Kirchner also told Tony that he believed Tony's arm injury was "fake." *Id.* at 47. There is no indication in the record that Tony's supervisors believed his general job performance was inadequate.

On May 24, 2001, Tony's doctor determined that he had reached maximum medical improvement. The doctor issued a letter stating that Tony could lift fifty pounds occasionally, twenty pounds frequently, and ten pounds constantly, and that he "should avoid forceful or repetitive use of the right upper extremity." *Id.* at 98. In September 2001, Tony had a dispute with Highway Department manager Jeff Taylor regarding his being assigned to use manual transmission trucks, which Tony believed could violate the no repetitive use work restriction for his right arm. The doctor issued another note stating that Tony could drive manual transmission trucks so long as he did not have to shift more than 500 times per day. Regardless, Taylor assigned Tony to a "duro-patching" job for multiple days in a row, using a manual transmission truck that required more than 500 shifts per day. *Id.* at 76. When another Highway Department employee asked management why Tony could not be given automatic transmission truck to drive instead, management responded that Tony "wasn't hurt that bad." *Id.* at 40.

In October 2001, Taylor told Tony "that from now on when [he was] told to do something, [he would] do it, that there will be no more complications." *Id.* at 74. Afterwards, Taylor assigned Tony to a job that involved driving stakes with a sledgehammer. Tony believed this violated his work restrictions, but did not refuse to perform the job because of what Taylor had recently told him.

On December 19, 2001, a vehicle struck Tony while he was performing maintenance on a highway, causing injury to his torso. Tony received disability benefits and was under a doctor's care for six months following the accident. On October 8, 2002, Tony was patching potholes when he experienced severe chest pain in the area of his torso that had been injured. On October 10, he went to a doctor who imposed work restrictions of no work below the mid-thigh level or above the shoulder level, and a weight lifting restriction of fifteen pounds. Upon returning to work, Tony initially was assigned light duty work, but on October 15, Kirchner assigned him to a job that required him to pick up large pieces of asphalt that weighed up to forty pounds apiece and throw them into the back of a dump truck. Tony performed the job but was in severe pain.

On October 16, Kirchner assigned Tony to "grind stumps," which involved shoveling debris from ground level up and into a dump truck. *Id.* at 48. Tony complained to Kirchner that this violated his work restrictions. Kirchner responded, "I'll look into it, and get back to you." *Id.* However, when Kirchner finally returned several hours later, he ordered Tony to continue "grinding stumps." *Id.* According to Tony, Kirchner had told him at one point that the doctor's office always faxes a copy of any work restrictions to the County.

After "grinding stumps" in pain on October 16, Tony went to the doctor again on October 17; the doctor continued Tony's work restrictions as before. On October 18, Kirchner directed Tony to cut trees and remove debris, which Tony again believed violated his work restrictions. On October 25, Kirchner directed Tony to service a truck, which involved strenuous

tasks such as heavy lifting and crawling underneath the vehicle. About one hour later, Tony walked off the job and never returned to work.

After quitting his job, Tony sought unemployment benefits through the Department of Workforce Development ("DWD"). The County opposed Tony's application on the ground that he had voluntarily resigned. An administrative law judge ("ALJ") found that Tony "was involuntarily unemployed due to a medically substantiated physical disability." *Id.* at 15. Moreover, the ALJ found that the County was aware of Tony's medical conditions and work restrictions and that Tony pointed out to management when his work assignments violated those restrictions.

In October 2004, Tony filed a complaint against the County alleging that he had been "constructively discharged . . . in retaliation for [his] worker's compensation claims." *Tony v. Elkhart County,* 851 N.E.2d 1032, 1034 (Ind.Ct.App.2006) ("*Tony I* "). The trial court dismissed the complaint for failing to state a claim upon which relief could be granted. We reversed that decision, holding that an employee may state a cause of action for constructive retaliatory discharge if he or she has been forced to resign as a result of exercising his or her statutory right to worker's compensation benefits. *Id.* at 1040. On remand, the County moved for summary judgment, asserting as a matter of law that Tony could not establish that he was constructively discharged. The trial court agreed and granted summary judgment in the County's favor. Tony now appeals.

## Analysis

When reviewing a summary judgment ruling, we apply the same standard as the trial court. *Auto–Owners Ins. Co. v. Harvey,* 842 N.E.2d 1279, 1282 (Ind.2006). Summary judgment is proper "if the desig-

nated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *Harvey,* 842 N.E.2d at 1282. We must construe all facts and reasonable inferences drawn from them in favor of the nonmoving party. *Harvey,* 842 N.E.2d at 1282. We may affirm a summary judgment ruling if it is sustainable on any legal theory or basis found in the evidentiary matter designated to the trial court. *West American Ins. Co. v. Cates,* 865 N.E.2d 1016, 1020 (Ind.Ct.App.2007), *trans. denied.*

■■■ "Indiana follows the doctrine of employment at will." *Tony I,* 851 N.E.2d at 1035. Under employment at will, which means employment of no definite or ascertainable term, employment is presumptively terminable at any time by either party, with or without cause. *Id.* One narrow exception to this rule was established by our supreme court in *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973). There, the court held that a cause of action exists if an employee is discharged in retaliation for exercising his or her statutorily conferred right to seek worker's compensation benefits. *Frampton,* 260 Ind. at 253, 297 N.E.2d at 428.

Tony, of course, was not explicitly fired by the County. He resigned. Before *Tony I,* no Indiana decision had ever permitted an employee to pursue a retaliatory discharge cause of action in such circumstances. In fact, in *Cripe, Inc. v. Clark,* 834 N.E.2d 731, 735 (Ind.Ct.App.2005), the majority stated, "we are not convinced that a constructive retaliatory discharge fits within the ambit of the narrowly-drawn exceptions to the employee-at-will doctrine." In *Tony I,* however, we agreed with Judge Robb's dissent in *Cripe* and held:

a constructive discharge in retaliation for filing a worker's compensation claim falls within the *Frampton* public policy exception and that a cause of action for constructive retaliatory discharge exists for an employee that can show that he has been forced to resign as a result of exercising this statutorily conferred right.

*Tony I*, 851 N.E.2d at 1040.

Very recently, our supreme court decided *Baker v. Tremco, Inc.*, 917 N.E.2d 650 (Ind.2009). It stated that it found *Tony I* "convincing" and held:

a constructive retaliatory discharge falls within the ambit of the narrowly drawn public policy exception to the employment at will doctrine. Depending on the facts, it is merely retaliatory discharge in reverse. The constructive discharge doctrine acknowledges the fact that some employee resignations are involuntary and further prevents employers who wrongfully force an employee to resign to escape any sort of liability for their actions.

*Baker*, 917 N.E.2d at 655. The court noted that constructive retaliatory discharge could only be applied to previously-recognized exceptions to the employment at will doctrine, but further observed that Tony's cause of action "certainly" fell within the *Frampton* exception. *Id.* Although not expressly stated, our supreme court's agreement with *Tony I* must also represent an implicit disapproval of *Cripe*.

▬ " 'A constructive discharge occurs when an employer purposefully creates working conditions [that] are so intolerable that an employee has no other option but to resign.' " *Tony I*, 851 N.E.2d at 1037 (quoting *Cripe*, 834 N.E.2d at 735) (alteration in original). Under this standard, we concluded that Tony's complaint contained sufficient allegations to state a claim upon which relief could be granted. *Id.* at 1040. Specifically, it alleged that Tony was in-

volved in two workplace accidents for which he filed worker's compensation claims, and thereafter his employer was hostile toward him, verbally ridiculed him, ignored his work restrictions, and required him to perform job tasks that placed him at risk for further injury. *Id.* On remand, in response to the County's motion for summary judgment, Tony presented supporting evidence for his claims that his superiors at the County verbally ridiculed him and knowingly asked him to perform job duties that exceeded restrictions imposed by doctors.

▬ We first address Tony's contention that the County is prohibited, under the doctrine of administrative collateral estoppel, from now arguing that he was not constructively discharged. Specifically, Tony argues that the DWD ALJ's conclusion that he was "involuntarily unemployed" is binding in this case. Appellant's App. p. 15. "In general, 'collateral estoppel applies where a particular issue is adjudicated and then put in issue in a subsequent suit on a different cause of action between the same parties or their privies.' " *Uylaki v. Town of Griffith*, 878 N.E.2d 412, 414 (Ind.Ct.App.2007) (quoting *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 394 (Ind.1988)). Our supreme court has outlined the following test for determining whether administrative collateral estoppel should apply:

1) whether the issues sought to be estopped were within the statutory jurisdiction of the agency;

2) whether the agency was acting in a judicial capacity;

3) whether both parties had a fair opportunity to litigate the issues;

4) whether the decision of the administrative tribunal could be appealed to a judicial tribunal.

*McClanahan*, 517 N.E.2d at 394.

We decline to find administrative collateral estoppel applicable here. It is unclear

that the standard for awarding unemployment benefits from the DWD is, or should be, equivalent to the standard for establishing a constructive retaliatory discharge. More importantly, however, there are two explicit statutes stating that a decision or factual finding by a DWD ALJ:

> is not conclusive or binding and shall not be used as evidence in a separate or subsequent action or proceeding between an individual and the individual's present or prior employer in an action or proceeding brought before an arbitrator, a court, or a judge of this state or the United States regardless of whether the prior action was between the same or related parties or involved the same facts.

I.C. § 22–4–17–12(h); I.C. § 22–4–32–9(b). These statutes clearly preclude the use of opinions by DWD ALJs for collateral estoppel purposes in a subsequent civil suit.[2]

We now squarely address whether the County established as a matter of law that Tony was not constructively discharged in retaliation for filing worker's compensation claims. Because there is scant Indiana law on the issue of constructive discharge, we turn for guidance to the federal courts, which frequently address constructive discharge in the context of various employment discrimination claims. First, however, we emphasize that our supreme court in *Frampton* stated, "Of course, the issue of retaliation should be a question for the trier of fact." *Frampton,* 260 Ind. at 253, 297 N.E.2d at 428. We keep that statement in mind when reviewing the grant of summary judgment in favor of the County.

■ The Seventh Circuit has stated that in order to establish a claim of constructive discharge, a plaintiff must prove that his or her working conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation. *Tutman v. WBBM–TV, Inc./CBS, Inc.,* 209 F.3d 1044, 1050 (7th Cir.2000), *cert. denied.* To establish a constructive discharge, working conditions must be even more egregious than the high standard for a hostile work environment because an employee ordinarily is expected to remain employed while seeking redress for the alleged discrimination or unfair treatment. *Id.* Additionally, " '[a]n employee may not be unreasonably sensitive to his working environment.' " *Brooms v. Regal Tube Co.,* 881 F.2d 412, 423 (7th Cir.1989) (quoting *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981)), *overruled in part on other grounds by Saxton v. American Tel. & Tel Co.,* 10 F.3d 526 (7th Cir. 1993).

■ Conversely, the Seventh Circuit has suggested that the objective "reasonable person" test for constructive discharge is not applicable if an employer "is proved to be deliberately taking advantage of a known idiosyncratic vulnerability of the employee (like Winston's fear of rats in Orwell's *Nineteen Eighty–Four* ) by altering the employee's working conditions in order to make the employee's life at work intolerable...." *Lindale v. Tokheim Corp.,* 145 F.3d 953, 955 (7th Cir.1998). Furthermore, "a work environment posing

---

2. Although *Uylaki* also concerned an opinion by a DWD ALJ, and we concluded that administrative collateral estoppel was applicable, we must point out that having reviewed the briefs filed in that appeal, which are available on Westlaw.com, neither party directed us to Indiana Code Sections 22–4–17–12(h) or 22–4–32–9(b). In light of these statutes, however, we must question *Uylaki* 's validity. The same is true of *McClanahan;* although our supreme court ultimately held administrative collateral estoppel was not applicable in that case, it also concerned a DWD ALJ decision and suggested that such estoppel might be appropriate in other cases. The statutory limitations on collateral estoppel and DWD ALJ decisions were added after *McClanahan* was decided. *See* P.L. 21–1995 §§ 90, 123.

grave threats to physical integrity may be intolerable." *Simpson v. Borg–Warner Automotive, Inc.,* 196 F.3d 873, 878 (7th Cir.1999). We also observe that federal courts in the Second Circuit have stated that constructive discharge may occur if an employee is subjected to an "unreasonable risk of physical harm . . . ." *Ongsiako v. City of New York,* 199 F.Supp.2d 180, 187 (S.D.N.Y.2002).

■ It is debatable whether Tony's claims of rude or boorish behavior by his superiors at the County with respect to calling him a "faker" and the like would by itself be sufficient to constitute a constructive discharge. *See Lindale,* 145 F.3d at 956 (stating, "Many workers have to put up with boorish colleagues."). However, we clearly implied in *Tony I* that evidence an employer has knowingly or with deliberate indifference ordered an employee to perform work duties that violate medical restrictions, thus putting the employee at risk of physical harm, can constitute a constructive discharge. This is consistent with the view of the federal courts that knowingly subjecting an employee to an unreasonable risk of physical harm may constitute a constructive discharge. Here, Tony presented evidence that his superiors at the County knowingly, or at the very least with deliberate indifference, ordered him on more than one occasion to perform job duties that violated express medical restrictions imposed by Tony's doctors, and that those orders caused Tony severe pain. This goes beyond Tony merely being "overly sensitive" to "boorish" colleagues or supervisors.

■ The County essentially contends that Tony did not do enough to complain about his working conditions. It notes that at no time, apparently, did Tony follow the official County procedures for making a claim of discrimination, nor did he file any grievances with his union. An employee's failure to exhaust all "official"

avenues for complaining about working conditions may be evidence that a reasonable person would not have actually found the conditions intolerable. *See Lindale,* 145 F.3d at 955–56. Such exhaustion is not an absolute prerequisite to a constructive discharge claim, however. *See id.*

■ Here, although Tony did not strictly follow "official" procedure for complaining about his working conditions, there is evidence that on several occasions he complained about job assignments violating his medical restrictions to his superiors. Furthermore, there is evidence those superiors warned Tony not to complain about his assignments, with express or implied threats of repercussions if Tony did so. Tony also complained directly to the County Commissioners about Kirchner's accusations of "fakery," to which the Commissioners responded unfavorably and which prompted Tony's union representative to warn him not to complain about his job. Given this evidence, Tony's failure to file "official" complaints about his working conditions is not fatal to his constructive discharge claim. We conclude the County has failed to establish as a matter of law that Tony was not constructively discharged.

■ The County further contends that even if Tony was constructively discharged, there is no evidence that it was done in retaliation for his filing of worker's compensation claims. We observe that generally, "The question of retaliatory motive for a discharge is a question for the trier of fact." *Powdertech, Inc. v. Joganic,* 776 N.E.2d 1251, 1261–62 (Ind.Ct.App. 2002). Summary judgment on the question of retaliation is only appropriate if the evidence could not lead any reasonable trier of fact to conclude that a discharge was caused by a prohibited retaliation. *Id.* at 1262 (quoting *Markley Enter., Inc. v. Grover,* 716 N.E.2d 559, 565 (Ind.Ct.App. 1999)). An employee must do more than

show the filing of a worker's compensation claim and a discharge. *Id.* Rather, "the employee must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext." *Id.*

Obviously, because this is a constructive discharge case, there is no stated reason for Tony's discharge. There is evidence, however, that Tony's difficulties at work only began after he suffered an on-the-job injury and sought worker's compensation benefits for it. Thereafter, Tony allegedly was repeatedly labeled a "faker" and was assigned job duties that violated medical restrictions required by his injuries. There is no evidence that Tony's job performance was unsatisfactory such that the County might have wanted to discharge him for other reasons, as opposed to penalizing him for seeking protections and benefits offered under our worker's compensation system. In other words, there is evidence, at least sufficient to survive summary judgment, that Tony was constructively discharged in retaliation for filing worker's compensation claims.

### Conclusion

Viewing the evidence in a light most favorable to Tony, it was improper to grant the County's motion for summary judgment. Tony has presented sufficient evidence to proceed on his claim that he was constructively discharged for filing worker's compensation claims. We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

NAJAM, J., and KIRSCH, J., concur.