## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 08 2016, 6:18 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patrick F. O'Leary
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Lyle R. Hardman
Patricia A. Mastagh
Hunt Suedhoff Kalamaros LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jan Van Daele,

*Appellant-Plaintiff,*

v.

Concord Community School Corporation,

*Appellee-Defendant.*

March 8, 2016

Court of Appeals Case No.
20A03-1509-PL-1539

Appeal from the Elkhart Superior Court

The Honorable Gretchen S. Lund, Judge

Trial Court Cause No.
20D04-1307-PL-172

**Bradford, Judge.**

# Case Summary

[1] On April 19, 2011, Appellant-Plaintiff Jan Van Daele filed a worker's compensation claim after injuring her shoulder during the course of her employment as a bus driver for Appellee-Defendant Concord Community School Corporation ("Concord"). On November 21, 2011, Van Daele's doctors released her to return to work, with certain limitations. Concord did not require Van Daele to return to work at this time. Instead, Concord permitted Van Daele to remain off of work and to continue to receive worker's compensation benefits while receiving additional treatment for her work-related injury.

[2] On March 12, 2012, Van Daele's doctors determined that Van Daele's condition had improved to the point that she should return to work immediately, again with certain limitations. Three days later, on March 15, 2012, Concord offered Van Daele a temporary transitional position which took into account the limitations set by Van Daele's doctors. At this time, Concord notified Van Daele that because her doctors had indicated that her condition had improved to the point where she should return to work, her worker's compensation benefits would cease if she did not accept the offered temporary transitional position. Van Daele ultimately decided to turn down the temporary transitional position.

[3] After Van Daele turned down the temporary transitional position, she was notified by Concord on April 18, 2012, that in light of her refusal to return to work, she could either resign from her employment or Concord would terminate her employment. Van Daele did not resign. On May 3, 2012,

Concord sent Van Daele a letter notifying her that her employment would be terminated. The termination of Van Daele's employment was subsequently approved by the school board on May 7, 2012.

[4] On July 1, 2013, Van Daele filed the underlying lawsuit, claiming that Concord wrongfully terminated her employment in retaliation for her act of filing a worker's compensation claim. On July 10, 2015, the trial court granted summary judgment in favor of Concord. Van Daele now challenges the trial court's award of summary judgment in favor of Concord. In doing so, Van Daele claims that issues of material fact remain as to whether Concord's stated reason for the termination of her employment, *i.e.*, that she had refused to return to work after having been released by her doctors to do so, was pretext. Concluding that all reasonable inferences from the designated evidence indicate that Van Daele's employment was not terminated *solely* because she filed a worker's compensation claim, we affirm.

## Facts and Procedural History

[5] At all times relevant to this appeal, Van Daele was employed as a bus driver for Concord. On April 1, 2011, Van Daele injured her shoulder while operating the brake on her bus. She reported the injury to Concord and filed a worker's compensation claim on April 19, 2011. Van Daele then began receiving workers compensation benefits, including medical treatment for her shoulder. Van Daele underwent surgery to repair damage to her right shoulder on November 9, 2011.

[6]     On November 21, 2011, Van Daele's doctors released her to return to work, with certain limitations. Concord did not require Van Daele to return to work at this time. Instead, Concord permitted Van Daele to remain off of work and to continue to receive worker's compensation benefits while receiving additional treatment for her work-related injury.

[7]     On March 12, 2012, Van Daele's doctors again determined that Van Daele's condition had improved to the point that she should return to work immediately, again with certain limitations. Three days later, on March 15, 2012, Van Daele met with her direct supervisor, Rich Matteson, who offered Van Daele a temporary transitional position as a door receptionist which took into account the limitations set by Van Daele's doctors. At this time, Concord notified Van Daele that because her doctors had indicated that she should return to work, her worker's compensation benefits would cease if she did not accept the offered temporary transitional position. Matteson sent Van Daele a follow-up letter on March 16, 2012, in which he again set forth the specific duties associated with the offered temporary transitional position and warned Van Daele that according to Concord's insurance provider, her worker's compensation benefits would cease if she did not accept the temporary transitional position and return to work. Van Daele ultimately decided to turn down the temporary transitional position. As a result, her worker's compensation benefits were terminated on March 29, 2012.

[8]     Concord Assistant Superintendent Tim Tahara notified Van Daele on April 18, 2012, that in light of her refusal to return to work after having been released by

her doctors to do so, she could either resign from her employment or Concord would terminate her employment. Van Daele did not resign, and on May 3, 2012, Tahara, on behalf of Concord, sent Van Daele a letter informing her that in light of her continuing inability to perform her essential job functions coupled with her refusal to accept the temporary transitional position and return to work after having be released to do so by her doctors, her employment would be terminated. Van Daele's employment was subsequently terminated during a May 7, 2012 school board meeting. Van Daele was officially notified of the termination of her employment in a letter sent by Concord Superintendent Wayne Stubbs on May 10, 2012.

[9] On July 1, 2013, Van Daele filed the underlying lawsuit, claiming that Concord wrongfully terminated her employment in retaliation for her act of filing a worker's compensation claim. On December 24, 2014, Concord filed a motion for summary judgment. The trial court subsequently granted a request for an extension of time to respond to Concord's motion for summary judgment. On February 4, 2015, Van Daele filed a motion to strike certain evidence designated by Concord in support of its motion for summary judgment. Specifically, Van Daele sought to strike Concord's answers to certain interrogatories. The trial court denied this motion on March 24, 2015, and ordered Van Daele to respond to Concord's motion for summary judgment no later than April 27, 2015.

[10] Van Daele filed a motion to reconsider its motion to strike on April 2, 2015. The trial court held a hearing on this motion on April 16, 2015, at which time

counsel for Van Daele admitted that he had intentionally not informed counsel for Concord of the alleged deficiencies in the challenged answers as a matter of trial strategy. The trial court denied Van Daele's motion to reconsider, ruled that Concord had timely and properly supplemented its responses to the challenged interrogatories, and set a May 28, 2015 hearing on Concord's motion for summary judgment. Van Daele responded to Concord's motion for summary judgment on April 27, 2015. On May 11, 2015, Concord filed its reply to Van Daele's response to its motion for summary judgment.

[11] Minutes before the May 28, 2015 hearing on Concord's motion for summary judgment, apparently without prior notice to Concord, Van Daele filed a second motion to strike portions of Concord's designated evidence. The trial court heard arguments from the parties regarding Concord's motion for summary judgment and gave Concord until June 15, 2015 to respond to Van Daele's second motion to strike. Concord filed its response to this motion on June 3, 2015.

[12] On July 10, 2015, the trial court issued an order denying Van Daele's second motion to strike and granting summary judgment in favor of Concord. Van Daele then filed a motion to correct error, which was subsequently denied by the trial court. This appeal follows.

# Discussion and Decision

[13] Van Daele contends that the trial court erred in granting summary judgment in favor of Concord. Our standard of review for a trial court's grant or denial of a motion for summary judgment is well-settled. *Purdy v. Wright Tree Serv., Inc.*, 835 N.E.2d 209, 212 (Ind. Ct. App. 2005), *trans. denied*. The purpose of summary judgment is to end litigation where no factual dispute exists and which may be determined as a matter of law. *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1255 (Ind. Ct. App. 2002). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Purdy*, 835 N.E.2d at 212. The party moving for summary judgment has the burden of showing that it is entitled to summary judgment. *Powdertech*, 776 N.E.2d at 1256. Appellate review of a summary judgment motion is limited to those materials designated to the trial court. *Purdy*, 835 N.E.2d at 212. We do not reweigh the designated evidence; rather, all facts and reasonable inferences drawn therefrom are construed in favor of the nonmovant. *Id*.

[14] The party appealing the denial of a motion for summary judgment has the burden of persuading the court on appeal that the trial court's ruling was improper. *Powdertech*, 776 N.E.2d at 1256. A grant of summary judgment may be affirmed upon any theory supported by the designated evidence. *Purdy*, 835 N.E.2d at 212. Further, although rulings on motions to correct error are usually reviewable under an abuse of discretion standard, we review a case de novo when the issue on appeal is purely a question of law. *Eagle Aircraft, Inc. v.*

*Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013) (citing *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009)).

## A. Claims of Retaliation Following Termination of Employment

In general, an employment contract of indefinite duration is presumptively terminable at the will of either party. *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1168 (Ind. 1989). However, in *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), our supreme court created an exception to the employment-at-will doctrine when an employee was discharged for filing a worker's compensation claim. The *Frampton* court stated that when an employee is discharged solely for exercising a statutorily conferred right, an exception to the general rule is recognized, and a cause of action exists in the employee as a result of the retaliatory discharge. *Id.* at 253, 297 N.E.2d at 428.

*Powdertech*, 776 N.E.2d at 1261.

"[A] plaintiff bringing a retaliation claim must first prove, by a preponderance of the evidence, a prima facie case of discrimination." *Id.* at 1262 (citing *Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 370 n. 3 (Ind. Ct. App. 1999)). "Then, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for discharge." *Id.* (citing *Dale*, 709 N.E.2d at 370 n. 3). "If the employer carries that burden, then the employee has the opportunity to prove, again by a preponderance of the evidence, that the reason offered by the employer is a pretext." *Id.* (citing *Dale*, 709 N.E.2d at 370 n. 3; *Fuller v. Allison Gas Turbine Div.*, 670 N.E.2d 64, 68 (Ind. Ct. App. 1996)). "In order to be successful on a claim for retaliatory discharge, a plaintiff must demonstrate that

[her] discharge was *solely* in retaliation for the exercise of" the statutory right to file a worker's compensation claim. *Purdy*, 835 N.E.2d at 212 (emphasis added). "We have previously explained that the word 'solely' means only that any and all reasons for the discharge must be unlawful to sustain the claim for retaliatory discharge." *Whirlpool Corp. v. Vanderburgh Cty.-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 758 (Ind. Ct. App. 2007).

[17] The question of retaliatory motive for a discharge is generally a question for the trier of fact. *Powdertech*, 776 N.E.2d at 1261-62 (citing *Dale*, 709 N.E.2d at 369).

> "Where causation or retaliation is at issue, summary judgment is only appropriate 'when the evidence is such that no reasonable trier of fact could conclude that a discharge was caused by a prohibited retaliation.'" *Markley Enter., Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999) (quoting *Hamann v. Gates Chevrolet Inc.*, 910 F.2d 1417, 1420 (7th Cir. 1990), *reh'g denied*). To survive a motion for summary judgment in a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself. *Grover*, 716 N.E.2d at 565. Accordingly, the employee must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext. *Dale*, 709 N.E.2d at 369.

*Id*. at 1262. "An employee can prove pretext by showing that: (1) the employer's stated reason has no basis in fact; (2) although based on fact, the stated reason[] was not the actual reason for discharge; or (3) the stated reason was insufficient to warrant the discharge." *Whirlpool Corp.*, 875 N.E.2d at 758.

[18]     In this case, Van Daele alleged that she had been retaliatorily discharged. Concord rejected this allegation and responded that it had discharged Van Daele because she refused to return to work after having been released by her doctors to do so. Again, in order to survive Concord's summary judgment motion, Van Daele had to present evidence from which a reasonable trier-of-fact could find that Concord's stated reason for the termination of her employment was pretext. *Powdertech*, 776 N.E.2d at 1262. The trial court determined that Van Daele failed to do so.

[19]     In challenging the trial court's award of summary judgment in favor of Concord, Van Daele argues that she designated evidence from which one could reasonably infer that Concord's stated reason for the termination of her employment was pretext and that her employment was instead terminated in retaliation for her filing of a worker's compensation claim. Van Daele points to certain pieces of designated evidence in support of this argument. The designated evidence cited to by Van Daele generally falls into the following five categories: (1) evidence demonstrating that Tahara displayed retaliatory intent; (2) evidence demonstrating that Tahara subsequently altered a letter sent to Van Daele regarding her termination; (3) evidence that Concord failed to timely respond to discovery; (4) evidence that Concord failed to warn Van Daele that rejection of the temporary transitional position would result in the termination of her employment; and (5) evidence relating to the allegedly suspicious timing of the termination.

# 1. Alleged Retaliatory Intent

Van Daele claims that she designated evidence which demonstrated that Tahara acted with retaliatory intent when he recommended the termination of her employment to the school board. Specifically, Van Daele points to her affidavit in which she averred that when she and her husband met with Tahara on April 18, 2012, Tahara "came into the room and proceeded to kick a chair. His tone and demeanor were angry. He said rudely: 'sit down. This has gone on long enough. You're not a good fit anymore. You've been out 22 weeks.'" Appellant's App. p. 405. Van Daele also points to the affidavit of her husband, Alan Van Daele. With respect to the April 18, 2012 meeting, Alan averred as follows:

> [Tahara's] demeanor was impersonal and unfriendly. Without any greeting or introduction, he immediately ordered us in a stern voice to be seated. As he did so, he planted his foot on one of the chairs and kicked it toward a wall. The chair struck the wall.
>
> 5). The meeting only lasted about five minutes. I recall Mr. Tahara telling Jan that she "wasn't a good fit," that "this has gone on long enough," that she had been off work for over 22 weeks, and that she had only two options – either "resign" from her bus driving job or be "terminated."

Appellant's App. p. 413. Van Daele asserts that the above-quoted statements are direct evidence of animus for Van Daele's act of filing a worker's compensation claim. We disagree.

[21] While Tahara may have addressed the Van Daeles in an angry or unfriendly tone, neither Van Daele or Alan averred that Tahara made any reference to the fact that Van Daele had filed a worker's compensation claim. Importantly, the Van Daeles both averred that Tahara instead referred to the length of time that Van Daele had been off of work. Also importantly, the April 18, 2012 meeting occurred over a month after Van Daele's doctors had indicated that Van Daele should return to work immediately and nearly a month after Van Daele had refused to accept the temporary transitional position offered by Concord. These facts are such that a reasonable trier-of-fact could only infer that any animus on behalf of Tahara was due to the fact that Van Daele had refused to return to work (1) after having been released by her doctors to do so, and (2) after having been offered a temporary position which complied with the restrictions put in place by her doctors. The Van Daeles' averments were not sufficient to allow a reasonable trier-of-fact to infer that said animus stemmed *solely* from the fact that Van Daele filed a worker's compensation claim.

[22] Further, to the extent that Van Daele relies on this court's prior opinions in *Markley Enterprises* and *Tony v. Elkhart County*, 918 N.E.2d 363 (Ind. Ct. App. 2009), we believe that these case are distinguishable from the facts presented here. In *Markley Enterprises*, the company indicated that Grover's employment was terminated because Harold Markley, the company's president, learned that Grover had made derogatory comments about the company to a co-worker and believed that Grover's comments would affect the company's ability to both attract new employees and retain existing employees. 716 N.E.2d at 565. The

parties designated evidence which demonstrated that the company had previously disciplined Grover for allegedly attempting to file a false claim for worker's compensation benefits. The parties also designated an internal company memorandum which disclosed an extremely hostile attitude against Grover for having attempted to file the previous claim and stated that Grover's employment would be terminated immediately in the event of "any repeat violations." *Id*. at 566. Noting that the question of retaliatory motive is generally a question for the trier-of-fact, we concluded that the company was not entitled to summary judgment because the designated evidence was sufficient to raise a genuine issue of material fact as to whether the company's true motive for terminating Grover's employment was the fact that he had made derogatory comments about the company or his filing of the worker's compensation claim. *Id*.

[23] In *Tony*, the evidence demonstrated that Tony's difficulties at work only began after he sought worker's compensation benefits for an injury which he suffered while "on-the-job." 918 N.E.2d at 371. After seeking worker's compensation benefits, Tony was allegedly repeatedly labeled a "faker" and was assigned job duties that violated medical restrictions required by his injuries. *Id*. There was no designated evidence suggesting that Tony's job performance was unsatisfactory such that Elkhart County might have wanted to discharge him for any valid reason, as opposed to penalizing him for seeking protections and benefits offered under the worker's compensation system. *Id*. Upon review, we

concluded that the parties designated evidence which "was at least sufficient to survive summary judgment." *Id*.

[24] Unlike in *Markley Enterprises* and *Tony*, there is no designated evidence indicating that Concord held a hostile attitude against Van Daele, exposed Van Daele to repeated harassment, or assigned Van Daele job duties that violated the medical restrictions put in place by her doctors. Instead, the designated evidence demonstrates that Concord attempted to accommodate Van Daele while she recovered from her work-related injury. Specifically, the designated evidence indicates that Concord allowed her to remain off of work and continue treatment after she was first released to return to work with restrictions and offered her a temporary transitional position which accommodated her work restrictions after she was released, for the second time, to return to work. The fact that Tahara allegedly used an angry or unfriendly tone and arguably acted in an unprofessional manner during the April 18, 2012 meeting, which again took place nearly a month after Van Daele refused to return to work despite being cleared to do so, did not expose Van Daele to an environment similar to the environments discussed in *Markley Enterprises* and *Tony*.

## 2. Alleged Alteration of Letter

[25] Van Daele also claims that an alleged alteration of certain designated evidence shows retaliatory intent by Concord. Specifically, Van Daele points to a letter sent by Tahara, on behalf of Concord, to Van Daele on May 3, 2012, indicating that her employment would be terminated because she remained unable to perform the essential functions of her job after more than twenty-two weeks of

leave coupled with the fact that she refused to accept the temporary transitional position offered by Concord after her doctor indicated that she was to return to work immediately with transitional duties. This letter was printed on Concord's letterhead and included the words "Assistant Superintendent" under Tahara's name on the signature line. Appellant's App. p. 441. The designated evidence also included a second copy of this letter which was provided to the Indiana Department of Workforce Development in August of 2012, in connection with Van Daele's subsequent request for unemployment benefits. The second copy of the letter was not printed on Concord letterhead, was dated May 7, 2012, and did not include the words "Assistant Superintendent" under Tahara's name. Appellant's App. p. 253. The letters were identical in all other respects.

[26] Van Daele asserts that the designated letters prove that Tahara deliberately altered the date of the letter from May 3, 2012 to May 7, 2012, in an attempt to conceal the fact that Concord had decided to terminate Van Daele's employment prior to the May 7, 2012 school board meeting. Van Daele, however, designated no evidence that the change of the date was deliberate. To the contrary, the designated evidence demonstrates that Tahara denied that the date change was deliberate. The designated evidence further demonstrates that Tahara explained that the computer that he used to prepare the letter had an "auto date" feature and that he surmised that the date change may have occurred when he retrieved a copy of the letter to take with him to the May 7, 2012 school board meeting. Appellant's App. p. 306. The trial court twice

found that the "'inconsistency'" in the letters does not lead to a reasonable inference of retaliatory motive as the date on the letter was legally "irrelevant." Appellant's App. p. 14. We agree with the trial court in this regard.

The undisputed designated evidence demonstrates that Van Daele was informed on April 18, 2012, that her employment would be terminated if she did not resign. On May 3, 2012, Tahara, on behalf of Concord, sent Van Daele the letter informing her that because she had not resigned, her employment would be terminated. As such, regardless of whether the letter was dated May 3 or May 7, 2012, the undisputed evidence demonstrates that in light of Van Daele's continued inability to perform her essential job functions coupled with her refusal to accept the temporary transitional position, Concord had decided to terminate Van Daele's employment on or before May 3, 2012. Both designated copies of the letter are consistent and reflect this decision. Therefore, we conclude that the designated evidence relating to this claim, which again consisted only of the two copies of the letter, is insufficient to allow a reasonable trier-of-fact to infer that Concord acted with retaliatory intent.[1]

### 3. Alleged Failure to Timely Respond to Discovery

Van Daele next claims that although Concord was obligated to provide all information that was available to the organization, it evaded certain discovery

---

[1] We note that our review of this and other claims raised by Van Daele on appeal was hampered by Van Daele's failure to cite to relevant portions of the record as required by the Indiana Rules of Appellate Procedure.

requests made by Van Daele for a period of approximately thirteen months. Van Daele argues that this alleged evasion is inconsistent with a clear conscience and is sufficient to support the inference that Concord's stated reason for the termination of her employment was pretext. Review of the designated evidence, however, demonstrates that Van Daele's assertions that Concord acted in an evasive manner and that certain interrogatories went unanswered for approximately thirteen months are misleading at best.

[29] On October 15, 2013, Wayne Stubbs, Superintendent of Concord, answered Van Daele's requested interrogatories. Van Daele subsequently determined that some of the provided answers were deficient, and on April 1, 2014, informed Concord that the answers provided for interrogatories number seventeen, eighteen, and twenty-two were deficient. Concord filed supplemental answers to these three interrogatories on May 1, 2014.

[30] On November 5, 2014, during the deposition of Tahara, counsel for Van Daele notified counsel for Concord that Van Daele believed that the answers provided for interrogatories number eleven, twelve, thirteen, fourteen, fifteen, and sixteen were also deficient. Concord filed supplemental answers to these six interrogatories as well as interrogatories number nineteen, twenty-four, and twenty-five on November 25, 2014. During an April 16, 2015 hearing, the trial court and Van Daele's counsel engaged in the following exchange regarding the decision to wait approximately thirteen months to notify counsel for Concord of the alleged deficiencies in the answers to interrogatories eleven through sixteen:

The Court:   I guess an – another question for you, Mr. O'Leary. There was a specific request made to the Defendants to supplement interrogatories, I believe it was 17 through 20, or perhaps, 16 through 20.  Why wasn't a specific request made to the Defendants at the time the other request was made to supplement Interrogatories 11 through how many numbers it was?

[Counsel]:    Purely unconditional trial strategy, Judge.  No other reason; purely, a trial strategy.

The Court:   Did you believe that their answers to interrogatories had been completed, or those were complete answers at that time?

[Counsel]:    I certainly did not.  I could look at them and tell that there were missing pieces of information that I customarily see when I ask someone, tell me the names of people who – who fired my client.  But, again, the Court seems to shift ever so slightly in putting the onus on us to get them to tell us what happened.

The Court:   Wasn't that the purpose of discovery though, so that parties can exchange information and engage in effective discovery to aid in resolving disputes?

[Counsel]:    Absolutely, and what is unequivocal, Judge Lund, what is confusing, Judge Lund, why is not clear by a question such as Interrogatory 12.  If the Defendant fired the Plaintiff, then please explain fully each reason, cause, or basis, for firing Plaintiff.
        Is the Court suggesting that I have to ask that question again, or ask it in a different way?

The Court:   No, Mr. O'Leary, what I'm simply asking is when you made a request for supplementation on certain Interrogatories if you didn't think that the answers were complete

in the Interrogatories, why you didn't ask for supplementation at that time?

[Counsel]:    And I told you that it was purely a matter of trial strategy.

Appellee's App. pp. 78-79.  During this hearing, counsel for Van Daele further stated:

But my point is, they're on the offensive with the summary judgment motion, they want something from the Court, right? They didn't have to file that Motion for Summary Judgment, and my point was, that if they had not filed that Motion for Summary Judgment, the first time anyone would have heard about the inadequacies of these discovery responses would have been in live time in front of the jury, all right.

Appellee's App. p. 73.

[31] On appeal, Van Daele argues that in failing to properly answer the six interrogatories in question, Concord acted evasively in an attempt to conceal the reason for the termination of Van Daele's employment.  The designated evidence demonstrates otherwise.  In fact, the designated evidence demonstrates that at all relevant time periods, Van Daele was aware of the reason for the termination of her employment.  As early as April 18, 2012, Concord notified Van Daele that her refusal to accept the temporary transitional position and return to work would result in the termination of her employment.  Concord has consistently relied on this reason and has not, at any point, presented any other reason for the termination of Van Daele's

employment. The designated evidence also demonstrates that Van Daele has been aware since May of 2012 that Tahara recommended the termination of her employment and said termination was approved by the school board and Stubbs, in his capacity as Superintendent of Concord.

[32] The designated evidence does not support the reasonable inference that Concord acted with evasion or with the intent to conceal the reason for the termination of Van Daele's employment. To the contrary, to the extent that either party could be said to have acted with evasive intent, that party would be Van Daele. The designated evidence demonstrates that Van Daele admittedly made the tactical decision not to inform Concord of the allegedly deficient answers to interrogatories eleven through sixteen in order to put herself in the position to surprise Concord by raising the issue for the first time at trial. The designated evidence further demonstrates that upon being notified of the allegedly deficient answers, Concord timely supplemented their answers to more fully answer Van Daele's questions. Upon review, we conclude that the designated evidence relating to Concord's alleged failure to present timely answers to interrogatories eleven through sixteen would not support the reasonable inference that Concord's stated reason for the termination of Van Daele's employment was pretext.

[33] Furthermore, to the extent that Van Daele relies on *In re Danikolas*, 838 N.E.2d 422 (Ind. 2014) and *EEOC v. Sears Roebuck and Company*, 243 F.3d 853 (4th Cir. 2001), in support of her claim, we note that both of these cases can be easily distinguished from the instant matter. Unlike the instant matter, in both *In re*

*Danikolas* and *Sears*, the defendant articulated untimely new grievances or justifications for the termination of the employee's employment. *See In re Danikolas*, 838 N.E.2d at 429 (providing that the employer provided "shifting" reasons for the employee's discharge); *Sears*, 243 F.3d at 853-55 (providing that the defendant provided untimely additional justifications for its decision to revoke the offer of employment). Again, here, the demonstrated evidence demonstrates that Concord has provided a consistent reason for the termination of Van Daele's employment throughout all relevant time periods. As such, Van Daele's reliance on *In re Danikolas* and *Sears* is misplaced.

## 4. Failure to Warn

[34] Van Daele also claims that the designated evidence indicating that she was initially only warned that declining the temporary transitional position would result in the suspension of her worker's compensation benefits supports a reasonable inference of pretext. The designated evidence demonstrates that in a March 16, 2012 letter, Matteson, her immediate supervisor, informed Van Daele that declining the temporary transitional position would result in the suspension of her worker's compensation benefits. Matteson did not also mention the possibility that declining the temporary transitional position would also result in the termination of her employment. Van Daele argues on appeal that "[i]f her acceptance of the transition position was so paramount, why hadn't Tahara instructed Matteson to warn Van Daele that her refusal to accept it would result in her termination?" Appellant's Br. p. 19. Van Daele further

argues that "[a]ccordingly, a jury might view Tahara's explanation for firing Van Daele as phoney[.]" Appellant's Br. p. 19.

[35] Van Daele's arguments in this regard seem to imply that Concord had a duty to inform her in the March 16, 2012 letter that if she refused the temporary transitional position, her employment would be terminated. Van Daele, however has failed to point to any designated evidence or citation to relevant authority to support this implication.

[36] Review of the designated evidence demonstrates that Concord gave Van Daele ample opportunity to decide to accept the temporary transitional position. The fact that Concord initially only warned Van Daele that refusal of the temporary transitional position would result in the suspension of her worker's compensation benefits does not support the reasonable inference that Concord's subsequent decision to terminate Van Daele's employment was pretext. Further, the fact that Tahara waited until April 18, 2012, to notify Van Daele that in light of her refusal to accept the temporary transitional position, she could either resign or her employment would be terminated is insufficient to support a reasonable inference of pretext because the intervening days afforded Van Daele the opportunity to consider and decide whether to accept the offered temporary transitional position.

## 5. Alleged Suspicious Timing

[37] Van Daele last claims that the designated evidence suggests that Tahara rushed the termination of Van Daele's employment as the likelihood of her ability to

return to her regular duties appeared more certain. In raising this claim, Van Daele asserts that "[o]nce Tahara realized from [Van Daele's doctor's] status reports that Van Daele was likely to be released to return to regular duty, he seized upon her decision to decline the transitional position, one month earlier. Tahara rushed to fire Van Daele before [her doctors] released her to return [to work] as a bus driver, or so a jury could reasonably conclude." Appellant's Br. p. 20. We disagree.

[38] The designated evidence demonstrates that while Van Daele was released by her doctors to return to her normal work-related duties around mid-day on May 7, 2012, nothing suggests that Tahara, or anyone else at Concord, was made aware that Van Daele had been released to resume her duties as a bus driver until after the decision was made to terminate Van Daele's employment. Tahara notified Van Daele on May 3, 2012, that because she remained unable to perform her bus-driving duties coupled with her refusal to accept the offered temporary transitional position, Concord "must terminate [her] employment contract." Appellant's App. p. 411. The designated evidence does not contain any indication that Tahara was made aware that Van Daele was on the verge of being released by her doctors to resume her bus-driving duties before sending the May 3, 2012 letter or at any time prior to the May 7, 2012 school board meeting.

[39] To the contrary, the designated evidence demonstrates that Van Daele did nothing to ensure that Concord knew prior to the May 7, 2012 board meeting that she had been released to return to work without any restrictions. Van

Daele admitted during her deposition in the instant matter that she did not notify anyone at Concord when she was released to resume her bus-driving duties on May 7, 2012. Van Daele also admitted that while she understood that her doctors would, at some point, notify Concord that she had been released to resume her bus driving duties, she did not know whether her doctors provided Concord with this information prior to the May 7, 2012 board meeting or on some later date.

[40] Upon review of the designated evidence, we conclude that there is nothing suspicious about the timing involved in Concord's decision to terminate Van Daele's employment. Again, Van Daele first reported her injury to Concord on April 19, 2011. She also filed her worker's compensation claim on this date. On November 21, 2011, Van Daele's doctors first released her to return to work with certain restrictions. Concord did not require Van Daele to return to work at this time but, rather, allowed her to continue her treatment and receive worker's compensation benefits. On March 12, 2012, Van Daele's doctors, for the second time, released her to return to work with certain restrictions. Three days later, Concord offered Van Daele a temporary transitional position which complied with the restrictions set forth by her doctors. After Van Daele refused to accept the offered temporary transitional position, Concord notified Van Daele that in light of her continued inability to perform her job duties coupled with her refusal to accept the offered temporary transitional position, her employment would be terminated if she did not resign. Van Daele did not resign and on May 3, 2012, Tahara sent Van Daele a letter indicating that her

employment would be terminated. Given that the designated evidence is devoid of any indication that Concord knew that Van Daele was going to be released to return to her bus-driving duties on May 7, 2012, or at any time in the near future, we conclude that the designated evidence does not support Van Daele's claim that Concord's time was suspicious. As such, the designated evidence establishing the timing of Concord's communications with Van Daele and the termination of Van Daele's employment are insufficient to support a reasonable inference of pretext.

# Conclusion

[41] In light of the facts above, we conclude that although Van Daele initially presented a prima facie case of discrimination, Concord countered by satisfactorily articulating legitimate, nondiscriminatory reasons for Van Daele's discharge. *See Powdertech*, 776 N.E.2d at 1262. Our review of the evidence designated by the parties leads us to the conclusion that Van Daele has failed to present evidence from which a reasonable trier-of-fact could infer that the reasons offered by Concord were mere pretext. *See id*. Thus, even applying a liberal construction in favor of Van Daele, we conclude that Van Daele has failed to demonstrate that she was discharged *solely* in retaliation for filing a worker's compensation claim. *See Purdy*, 835 N.E.2d at 212. In light of our conclusion that Van Daele has failed to establish that she was discharged *solely* in retaliation for filing a worker's compensation claim, *id.*, we cannot say that the trial court erred in granting summary judgment in favor of Concord.

The judgment of the trial court is affirmed.

Baker, J., and Pyle, J, concur.